Citation Nr: 1237356 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 05-04 694 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to service connection for liver disease with elevated enzymes.

2. Entitlement to service connection for a blood disorder with swollen lymph nodes (claimed as hypogammaglobulinemia/immune deficiency and undifferentiated connective tissue disease).

3. Entitlement to compensation under 38 U.S.C.A. § 1151 for right kidney damage and/or liver damage due to medical treatment furnished by VA.

4. Entitlement to an initial evaluation in excess of 10 percent for peritoneal adhesions.

5. Entitlement to a compensable evaluation for residuals of right kidney nephrolithiasis.

6. Entitlement to a total disability rating based upon individual unemployability (TDIU) due to service-connected disabilities.




REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

S. Finn, Counsel

INTRODUCTION

The Veteran had active service from February 1978 to February 1982.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from October 2002, May 2003, December 2004, and January 2007 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia.

The RO scheduled a personal hearing in March 2004. However, July 2004 RO correspondence shows that a hearing was not held by mutual agreement. A VA examination was scheduled in lieu of a personal hearing.

The Veteran testified before Decision Review Officers (DRO) at the RO in April 2007 and December 2008, and before the undersigned Acting Veterans Law Judge at a Travel Board hearing in Huntington, West Virginia in June 2009. Transcripts of the proceedings are of record.


During the June 2009 Travel Board hearing, the Veteran withdrew his appeal for entitlement to service connection for a left kidney disability. In October 2009, the Board dismissed this issue and remanded the remaining issues for further development. With regard to the issues decided below, the Board is satisfied that there has been substantial compliance with the remand directives and the Board may proceed with review. Stegall v. West, 11 Vet. App. 268 (1998). 

The Board notes that, in addition to the paper claims file, there is a Virtual VA paperless claims file associated with the Veteran's claim. A review of the documents in such file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issues on appeal.

The issues of service connection for a blood disorder; and a compensable evaluation for right kidney nephrolithiasis, and TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. The Veteran does not have a disability, disease, or injury of the liver.

2. The Veteran's alleged damage to the right kidney and/or liver is not due to carelessness, negligence, lack of proper skill, error in judgment, similar instance of fault on VA's part in furnishing medical treatment.

3. The objective medical evidence of record fails to reflect that the Veteran has moderately severe peritoneal adhesions with partial obstructions manifested by delayed motility of barium meal and less frequent and less prolonged episodes of pain.




CONCLUSIONS OF LAW

1. The criteria for service connection for a liver disability have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2012).

2. The criteria for an award of compensation pursuant to 38 U.S.C.A. § 1151 for right kidney damage as a result of VA treatment have not been met. 38 U.S.C.A. § 1151 (West 2002); 38 C.F.R. § 3.361 (2012).

3. The criteria for a rating in excess of 10 percent for peritoneal adhesions have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002); 38 C.F.R. § 4.73, Diagnostic Code 7301 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126, was signed into law on November 9, 2000. Implementing regulations were created, codified at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326.

VCAA notice consistent with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence that the claimant is expected to provide.

Prior to the initial adjudication of the Veteran's claims for liver disease and 1151 for right kidney/liver damage, he was provided notice of the VCAA in July 2002 and December 2002. Additional VCAA letters were sent in May 2006 and February 2010. The VCAA letters indicated the types of information and evidence necessary to substantiate the claims, and the division of responsibility between the Veteran and VA for obtaining that evidence, including the information needed to obtain lay evidence and both private and VA medical treatment records. The Veteran received notice pertaining to the downstream disability rating and effective date elements of his claims with subsequent readjudication. Dingess v. Nicholson, 19 Vet. App. 473 (2006); see also Pelegrini, 18 Vet. App. at 119-20; see also Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). The latter letters (May 2006 VCAA notice of perontineal adhesions and February 2010 VCAA notice) were provided to the Veteran after the initial adjudication of his claim with subsequent readjudication a March 2012 supplemental statement of the case (SSOC). Pelegrini v. Principi, 18 Vet. App. 112 (2004).

With regard to peritoneal adhesions, service connection has been established and an initial rating has been assigned. The Veteran has been awarded the benefit sought. See Dingess v. Nicholson, 19 Vet. App. at 490-491. As such, 38 U.S.C.A. § 5103(a) notice is no longer required as to this matter, because the purpose for which such notice was intended to serve has been fulfilled. Id. Also, it is of controlling significance that, after awarding the Veteran service connection, he filed a notice of disagreement contesting the initial rating determination. See 73 Fed. Reg. 23353-23356 (April 30, 2008) (amending 38 C.F.R. § 3.159(b) to add subparagraph (3), which provides VA has no duty to provide section 5103 notice upon receipt of a notice of disagreement). The RO furnished the Veteran a Statement of the Case that addressed the initial rating assigned, included notice of the criteria for a higher rating, and provided the Veteran with further opportunity to identify and submit additional information and/or argument, which the Veteran has done by perfecting his appeal. See 38 U.S.C.A. §§ 5103A, 5104(a), 7105 (West 2002). 

The Veteran was afforded a VA examination in April 2004, July 2005, and October 2006. These examinations, combined with other treatment records of file, were thorough in nature and adequate for the purposes of deciding these claims. The reports reflect that the examiner reviewed the Veteran's past medical history, recorded his current complaints, conducted an appropriate physical examination, and rendered an appropriate diagnosis and opinion consistent with the evidence of record. With regard to peritoneal adhesions, he has not specifically asserted that his symptoms have noticeably worsened since the examination. The Board thus finds no basis for repeat examination. See VAOPGCPREC 11-95 (April 7, 1995) (the length of time since the last examination, in and of itself, does not warrant a further examination in increased evaluation cases).

The RO contacted the National Personnel Records Center (NPRC) specifically requesting records regarding the Veteran's 1979 surgery. The RO also contacted Tripler Army Medical Center to obtain these records. The NPRC responded that all available service treatment records (STRs) had been associated with the claims file. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) ((remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with)).

Further, the Veteran testified at a Board hearing that focused on the elements necessary to substantiate his claims and the Veteran, through his testimony and his representative's statements, demonstrated that he had actual knowledge of the elements necessary to substantiate the claims for benefits. The VLJ complied with the duties set forth in 38 C.F.R. 3.103(c)(2) (2012) consistent with Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

All relevant evidence necessary for an equitable resolution of the issues on appeal has been identified and obtained, to the extent possible. The evidence of record includes STRs, service personnel records, private medical records, VA outpatient treatment reports, VA examinations, and statements and testimony from the Veteran and his representative. The Veteran has not indicated that he has any further evidence to submit to VA, or which VA needs to obtain. There is no indication that there exists any additional evidence that has a bearing on this case that has not been obtained. The Veteran and his representative have been accorded ample opportunity to present evidence and argument in support of his appeal. All pertinent due process requirements have been met. See 38 C.F.R. § 3.103.



Service Connection for Liver Disease

The Veteran asserts that he has a diagnosis of liver disease as a result of his military service.

In order to establish service connection for a claimed disorder on a direct basis, there must be: (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of the in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

Significantly, however, medical evidence of record does not support the Veteran's contentions of liver disease caused by service. STRs do not reflect a diagnosis of liver disease.

Post-service treatment records are negative for a diagnosis of liver disease. The Veteran has received a considerable amount of treatment for medical conditions at VA facilities. None of the VA records refer to hepatitis or liver disease or symptoms attributed to liver disease.

Specifically, a February 1988 physical examination found that the liver was normal to percussion. A May 2000 Acute Hepatitis Profile showed negative findings of Hepatitis A, B, and C. A July 2000 treatment record noted elevated LFTs (liver function tests) of uncertain etiology. Ultrasound of the liver was normal. A July 2002 treatment record noted a history of elevated LFTs that have normalized. A January 2003 VA treatment record noted normal LFTs.

An April 2004 VA examination noted that over the past few years he had a couple of episodes of elevated LFTs. However, the liver enzymes and LFTS have been normal with the exception of his ALT of 43. The Veteran had a hepatitis panel screening that was negative in July 2002. Previous ultrasounds of the liver and CAT scan were normal. The Veteran had his liver biopsied to determine if he had hepatitis C, which was negative. 

An October 2006 VA examination reflects that the VA examiner reviewed the Veteran's past medical history, conducted an examination, and found that there was no evidence of kidney or liver damage.

A July 2007 VA examiner noted that the Veteran underwent a liver biopsy in April 2004, which showed slight congestion with periportal slightly mononuclear/lymphatic cell infiltrates with focal fibrosis. After a physical examination and after review of the claims file, the examiner found no evidence to support the Veteran having underlying liver condition, such as hepatitis B or C. His liver function tests with the exception of an ALT were within normal limits. 

The Veteran has never been found to have liver disease or injury, including any form of hepatitis. There are repeated references to elevated LFTs found in the VA treatment records, but no finding of any liver disease or injury or any treatment for liver disease or injury or symptoms attributed to liver disease or injury. An abnormal laboratory finding is not, in and of itself, a disability. See 61 Fed. Reg. 20,440, 20,445 (May 7, 1996). Here, the Veteran's treating clinicians were well aware of his elevated LFTs. The fact that there is no diagnosis of liver disease and no concern expressed by clinicians for many years following the notation of elevated LFTs is evidence that the Veteran does not have disease or injury of his liver.

Also considered by the Board are the Veteran's contentions that he has liver disease. He has not provided any evidence of symptoms of liver disease.

As to his opinion that he has liver disease, that opinion is not competent evidence because he has not demonstrated the medical expertise needed to render a diagnosis of liver disease. Although it is error to categorically reject a non-expert nexus opinion, not all questions of nexus are subject to non-expert opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case. In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew from its earlier decision in Jandreau v. Nicholson to explain its holding. Id.

The Veteran has not pointed to any observable symptoms of liver disease and has never been found to have any observable symptoms of liver disease. Whether or not someone has liver disease is not a simple question. It is common knowledge that laboratory tests and other medical procedures are needed to determine whether a person has liver disease and specifically what the disease is. Furthermore, in this case there is reference to abnormal laboratory test results yet clinicians never diagnosed or treated the Veteran for liver disease. Whether the Veteran has liver disease is not one that is subject to non-expert opinion. His contention that he has liver disease is not competent evidence.

As the available post-service medical evidence illustrates that a diagnosis of liver disease has not been made. [Pain alone is not considered to be a disability for VA compensation purposes]. Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed. Cir. 2001).] 

The preponderance of the evidence is clearly against the Veteran's claim. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (in which the Court held that, in the absence of proof of a present disability, there can be no valid claim). See also Hickson v. West, 12 Vet. App. 247, 253 (1999). The benefit-of-the-doubt rule does not apply. The claim must be denied.

1151 Claim

The Veteran asserts that he is entitled to compensation under 38 U.S.C.A. § 1151 for right kidney damage and/or liver damage due to medical treatment furnished by a VA.

In order to warrant compensation under 38 U.S.C.A. § 1151, the Veteran must demonstrate that the VA treatment in question resulted in an additional disability and that the proximate cause of the additional disability was carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing the surgical treatment, or that the proximate cause of the additional disability was an event that was not reasonably foreseeable. VAOPGCPREC 40-97, 63 Fed. Reg. 31,263 (1998).

To determine whether the Veteran has additional disability, VA compares the Veteran's condition immediately before the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy (CWT) program upon which the claim is based to the Veteran's condition after such care, treatment, examination, services, or program has stopped. VA considers each involved body part or system separately. 38 C.F.R. § 3.361(b) (2012). For claims received on or after October 1, 1997, as in the instant case, the claimant must establish actual causation. To meet causation requirements based on additional disability, the evidence must show that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or that the proximate cause of the additional disability was an event that was not reasonably foreseeable. With regard to the former element, it must be shown that VA's care, treatment, or examination caused the Veteran's additional disability and VA failed to exercise the degree of care that would be expected of a reasonable health care provider or VA furnished such VA care, treatment, or examination without the Veteran's informed consent. 38 C.F.R. § 3.361(c), (d) (2012).

Informed consent is the freely given consent that follows a careful explanation by the practitioner to the patient of the proposed diagnostic or therapeutic procedure or course of treatment. The practitioner must explain in language understandable to the patient the nature of a proposed procedure or treatment; the expected benefits; reasonably foreseeable associated risks, complications or side effects; reasonable and available alternatives; and anticipated results if nothing is done. The patient must be given the opportunity to ask questions, to indicate comprehension of the information provided, and to grant permission freely without coercion. The practitioner must advise if the proposed treatment is novel or unorthodox. The patient may withhold or revoke his or her consent at any time. 38 C.F.R. § 17.32(c) (2012). The informed consent process must be appropriately documented in the health record. Signature consent is required for all diagnostic and therapeutic treatments or procedures that require anesthesia. 38 C.F.R. § 17.32(d) (2012).

Whether the proximate cause of a Veteran's additional disability or death was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of § 17.32 of this chapter. 38 C.F.R. § 3.361(d)(2) (2012).

Available STRs showed that the Veteran underwent right kidney surgery in April 1979 at the Tripler Army Medical Center in Honolulu, Hawaii. He had a pyelolithotomy and pyeloplasty in April 1979 for the right kidney for removal of a large kidney stone. Follow-up x-rays of the right kidney revealed good function with a blood vessel crossing. There was no further evidence of kidney stones or obstructions. 

A May 2002 VA treatment record noted status post-surgery in 1979 for kidney problems. 

Specifically, a February 1988 physical examination found that the liver was normal to percussion. A May 2000 Acute Hepatitis Profile showed negative findings of Hepatitis A, B, and C. A July 2000 treatment record noted elevated LFTs (liver function tests) of uncertain etiology. Ultrasound of the liver was normal. A July 2002 treatment record noted a history of elevated LFTs that have normalized. A January 2003 VA treatment record noted normal LFTs.

An April 2004 VA examination noted that over the past few years he had a couple of episodes of elevated LFTs. However, the liver enzymes and LFTS have been normal with the exception of his ALT of 43. The Veteran had a hepatitis panel screening that was negative in July 2002. Previous ultrasounds of the liver and CAT scan were normal. The Veteran had his liver biopsied to determine if he had hepatitis C, which was negative. 

An October 2006 VA examination reflects that the VA examiner reviewed the Veteran's past medical history and examination. He stated that he reviewed the Veteran's lab work and renal ultrasound from April 2006. There had been no renal colic or kidney stones. There was no acute nephritis or recent treatment. There was no increase in the residual of abdominal adhesions. He noted that the ultrasound of the kidneys showed normal size, shape, and echogenicity with no evidence of mass or hydronephrosis. The VA examiner stated that there was no evidence of kidney or liver damage.

A July 2007 VA examiner noted that the Veteran underwent a liver biopsy in April 2004, which showed slight congestion with periportal slightly mononuclear/lymphatic cell infiltrates with focal fibrosis. After a physical examination and after review of the claims file, the examiner found no evidence to support the Veteran having underlying liver condition, such as hepatitis B or C. His liver function tests with the exception of an ALT were within normal limits. 

The evidence does not show that the Veteran has liver or kidney disease or any additional disability as a result of VA treatment. There is no evidence of an additional disability caused by carelessness, negligence, lack of proper skill, error in judgment, similar instance of fault on VA's or that the proximate cause of an event that was not reasonably foreseeable. 

Furthermore, the evidence does not show that VA failed to exercise the degree of care that would be expected of a reasonable health care provider or VA furnished such VA care, treatment, or examination without the Veteran's informed consent. The competent evidence of record does not indicate that VA failed to exercise the degree of care that would be expected of a reasonable health care provider. Indeed, no medical professional has provided such opinion.

Moreover, the evidence does not show that the proximate cause was an event that was not reasonably foreseeable. In this case, the Veteran has not even contended that he was not provided informed consent. Thus, the evidence does not support a finding that VA furnished care without the Veteran's informed consent.

The totality of the evidence does not show he has an additional disability, let alone, an additional disability that is the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing medical treatment, or that the proximate cause of the additional complaints was an event that was not reasonably foreseeable.

The Board acknowledges the Veteran's belief that he has suffered an additional disability as a result of VA treatment or lack thereof. However, there is no evidence of record showing that the Veteran has the specialized medical education, training, and experience necessary to render competent opinion regarding whether he has additional disability due to VA that is the result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing medical treatment, or that the proximate cause of the additional disability was an event that was not reasonably foreseeable. Espiritu, 2 Vet. App. 492; 38 C.F.R. § 3.159(a) (1). Consequently, the Veteran's own assertions have no probative value.

The preponderance of the evidence is against the Veteran's claim for compensation pursuant to 38 U.S.C.A. § 1151. The benefit-of-the-doubt rule does not apply, and the Veteran's claim of entitlement to compensation pursuant to 38 U.S.C.A. § 1151 is denied. See 38 U.S.C.A §5107.

Higher Initial Rating for Peritoneal Adhesions

The Veteran's abdominal adhesions have been evaluated pursuant to Diagnostic Code 7301, which outlines the rating criteria for adhesions of the peritoneum. 

Disability ratings are assigned in accordance with the VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321(a), 4.1. Separate diagnostic codes identify the various disabilities. See 38 C.F.R. Part 4. Specific diagnostic codes will be discussed where appropriate below.

Aveteran's entire history is reviewed when making disability evaluations. See 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1995). However, where the question for consideration is the propriety of the initial evaluation assigned after the grant of service connection, evaluation of the medical evidence since the effective date of the grant of service connection and consideration of the appropriateness of "staged ratings" is required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2012). All reasonable doubt is resolved in the veteran's favor. 38 C.F.R. § 4.3.

Under Diagnostic Code 7301, a 10 percent rating is assigned for moderate peritoneal adhesions with pulling pain on attempting to work or aggravated by movements of the body, or occasional episodes of colic pain, nausea, constipation (perhaps alternating with diarrhea) or abdominal distension. 

A 30 percent rating is assigned for moderately severe peritoneal adhesions with partial obstruction manifested by delayed motility of barium meal and less frequent and less prolonged episodes of pain (than those contemplated by the 50 percent rating). 

A 50 percent rating is assigned for severe peritoneal adhesions with definite partial obstruction shown by x-ray, with frequent and prolonged episodes of severe colic distension, nausea or vomiting, following severe peritonitis, ruptured appendix, perforated ulcer, or operation with drainage. 38 C.F.R. § 4.114, Diagnostic Code 7301 (2012). 

The terms "moderate" and "severe" are not defined in the VA Schedule for rating disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6 (2012).

The Veteran was diagnosed with acute gastroenteritis in May 2000. A July 2000 treatment record noted abdominal pain, rule out bilary colic. A May 2002 VA treatment record noted that the Veteran had a history of gastroenteritis. He complained of left upper quadrant abdominal pain for the past two years. The Veteran was diagnosed with left upper quadrant abdominal pain with unknown etiology. 

An October 2002 VA examiner, in part, assessed the Veteran with pyeloplasty and pyelolithotomy in January 1979 for a right UPJ (ureteropelvic junction) obstruction and pelvic calculus without recurrence of stones and with intact remain renal function and negative bladder scan as well as a benign CT (computed tomography) scar of the abdomen and pelvis. The examiner assessed the Veteran with recurrent prostatitis occurring 3 to 4 times a year as well as early signs of enlarged prostate.

An April 2004 VA examiner noted that the Veteran had a mid-abdominal scar. The scar was from his mid-xiphoid process to below his umbilicus. It was keloid formation over the area just below the xiphoid process. The abdomen was soft and nontender, bowel sounds present, and no masses were felt. The VA examiner opined that the Veteran's pain in the left was adhesions from his previous surgery.

An October 2004 VA treatment record noted that the Veteran had an incisional hernia from his abdominal surgery that appeared more pronounced.

A July 2005 VA examination noted no change in bowel function since hernia. The Veteran had intermittent diarrhea over the past year and half. An October 2006 VA examination reflects that the VA examiner reviewed the Veteran's past medical history and examination. There was no increase in the residual of abdominal adhesions. The Veteran engaged in physical activities to keep the abdominal muscles strong to prevent worsening.

VA treatment records do not reflect treatment for peronitenal adhesions.

The Veteran is competent to attest to the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006). However, significantly more weight is placed on the objective clinical findings reported on examination than the Veteran's statements. The opinions and observations of the Veteran cannot meet the burden imposed by the rating criteria under 38 C.F.R. § 4.124a with respect to determining the current severity, which requires medical expertise. See Moray v. Brown, 2 Vet. App. 211, 214 (1993); 38 C.F.R. § 3.159(a)(1) and (2) (2012). 

After reviewing the medical evidence of record, the Board does not find that the Veteran is entitled to a rating in excess of 10 percent for his service-connected abdominal adhesions. 

As outlined above, the criteria for the next higher disability rating pursuant to Diagnostic Code 7301 requires evidence of moderately severe peritoneal adhesions with partial obstruction manifested by delayed motility of barium meal and less frequent and less prolonged episodes of pain. In that regard, evidence does not reveal any intestinal obstruction. Moreover, the July 2005 VA examiner stated that there was no increase in the residual of abdominal adhesions.

Accordingly, given the objective medical findings of record, the Veteran's current disability picture is adequately contemplated by his 10 percent rating. Accordingly, the claim is denied.

The peritoneal adhesions have been no more than 10 percent disabling since the effective date of his award, so his rating cannot be "staged" because this represents his greatest level of functional impairment attributable to this condition. See Fenderson, 12 Vet. App. at 125-26.

A referral for an extraschedular rating under the provisions of 38 C.F.R. § 3.321(b)(1) is not appropriate. The threshold factor for extra-schedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009).

As described above, the manifestations of the adhesions are contemplated by the schedular criteria. No examiner has reported an exceptional disability picture with symptoms not represented in the rating schedule. His subjective symptoms of are accurately described but the rating criteria. Accordingly, the Board has determined that referral of this case for extra-schedular consideration is not in order.


ORDER

Service connection for liver disease with elevated enzymes is denied.

Compensation under 38 U.S.C.A. § 1151 for right kidney and/or liver damage due to medical treatment furnished by a VA hospital is denied.

An initial evaluation in excess of 10 percent for peritoneal adhesions is denied.


REMAND

With regard to a blood disorder/immune deficiency, the Veteran has recently been diagnosed with hypogammaglobulinemia, an immune deficiency syndrome, and undifferentiated connective tissue disease. (See June 2008 Treatment Record from Dr. P. and April 2009 University of Pittsburgh Physicians Department of Medicine). In April 2012 correspondence the Veteran stated that he recently had two bone marrow biopsies in 2011 at Pittsburg VAMC and that these records were pertinent to his blood disorder claim. Also in June 2010 correspondence, the Veteran stated that he had abnormal blood tests in June 2010 at Clarksburg VAMC that would confirm a blood disorder. On remand, the RO must obtain these treatment records and a current examination from a hematologist to ascertain the nature and etiology of these conditions.

In April 2012 correspondence the Veteran reported that his residuals of a right kidney nephrolithiasis have worsened since his last VA examination in July 2007. The VA Office of General Counsel has held that, while a lapse of time in and of itself does not necessarily require a re-examination in rating cases, a further examination is needed in instances where the Veteran has reported a worsening in the disability since his last examination. See VAOPGCPREC 11-95 (Apr. 7, 1995). Therefore, additional development is warranted to obtain a new VA examination.

The Veteran seeks entitlement to TDIU. As the claims for service connection and an increased rating could affect his claim for TDIU, the Board finds that the claims are inextricably intertwined and a Board decision at thi s time would be premature. See Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated).

Finally, to ensure completeness of the record, the RO should obtain all outstanding VA treatment records, if any. See Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following action:

1. After securing any necessary release forms, with full address information, the RO should obtain all outstanding records of evaluation and/or treatment of the Veteran by VA and/or any other pertinent private medical facility (i.e., June 2010 blood tests from VAMC in Clarksburg and 2011 bone marrow biopsies from Pittsburg VAMC). All records and/or responses received should be associated with the claims folder. If any VA or private records sought are not obtained, notify the Veteran and his attorney of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken. 

2. Then, the Veteran should be afforded a VA examination, with an appropriate examiner, to determine the nature, severity, and frequency of any exacerbations of his right kidney nephrolithiasis, and to identify all residuals of that disease. The Veteran's claims file should be made available to the examiner, and the examiner is requested to review the entire claims file in conjunction with the examination.

All tests and studies deemed necessary by the examiner should be performed. 

A complete rationale should be given for all opinions and conclusions expressed in a typewritten report.

3. The RO must obtain an opinion by a hematologist, on a fee basis if necessary, in order to determine the nature and likely etiology of the claimed blood/immune disorder.

The Veteran's claims file should be made available to the hematologist, and the hematologist is requested to review the entire claims file in conjunction with the examination.

The hematologist must opine as to whether it is at least as likely as not that any current disability of a blood/immune disorder (hypogammaglobulinemia, an immune deficiency syndrome, and undifferentiated connective tissue disease) is due to an event or incident of his period of active service, to include is 1979 kidney surgery. 

All findings must be reported in detail. The VA examiner is specifically requested to comment on the STRs, including the in-service histories and the Veteran's lay assertions. A complete explanation based on clinical experience, medical expertise, and established medical principles for all opinions expressed should be provided in a legible report. 

4. The RO/AMC should conduct any other appropriate examination and development it deems necessary. Then readjudicate the claims of service connection for a blood disorder; higher initial rating for a compensable evaluation for residual right kidney nephrolithiasis, and TDIU. If the benefits sought remain denied, the Veteran and his representative should be provided a supplemental statement of the case (SSOC). An appropriate period of time should be allowed for a response.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).




______________________________________________
APRIL MADDOX
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs