Citation Nr: 1305220 
Decision Date: 02/13/13 Archive Date: 02/21/13

DOCKET NO. 09-35 874 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Oakland, California


THE ISSUES

1. Entitlement to service connection for a spine condition.

2. Entitlement to service connection for headaches.

3. Entitlement to service connection for posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Nichols, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1974 to July 1977.

These matters are before the Board of Veterans' Appeals (Board) on appeal from a rating decision by the RO in November 2008.

A review of the Virtual VA paperless claims processing system reveals documents that are either duplicative of the evidence of record or are not pertinent to the present appeal. 

The issue of service connection for PTSD is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. A spine disability was not manifested in service and is not casually or etiologically related to his period of active service.

2. The Veteran currently is not shown to have a disability manifested by headaches that had its clinical onset during his period of active service.


CONCLUSIONS OF LAW

1. A spine disability due to disease or injury was not incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131, 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.303 (2012).

2. The Veteran does not have a disability manifested by headaches due to disease or injury that was incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131, 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. § 3.303 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to Notify and Duty to Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2012). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claims. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

The RO provided a VCAA-compliant notice letter to the Veteran in July 2008, prior to the initial adjudication of the claims. 

The letter notified the Veteran of what information and evidence must be submitted to substantiate his claims for service connection, as well as what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. He was also told to inform VA of any additional information or evidence that VA should have, and was told to submit evidence in support of his claims to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

The requirements of VCAA also include notice of a disability rating and an effective date for award of benefits if service connection is granted. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). He was provided with notice of the type of evidence necessary to establish a disability rating and effective dates. 

The record establishes that the Veteran has been afforded a meaningful opportunity to participate in the adjudication of his claims. Thus, there is no prejudice to the Veteran in the Board's considering this case on its merits. 

The Board finds that all relevant evidence has been obtained with regard to the Veteran's claims of service connection for a spine condition and headaches, and the duty to assist requirements have been satisfied. All available service treatment records were obtained. 

VA has not afforded the Veteran a comprehensive medical examination relating to his claims for service connection for his spine condition and headaches. The Board finds that such an examination is not necessary to render a decision under the circumstances of this case. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also 38 U.S.C.A. § 5103A(d)(2), 38 C.F.R. § 3.159(c)(4)(i).

Under McLendon, in disability compensation claims, VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. Id. 

A VA examination under the standards of McLendon is not warranted in this case. With respect to the spine condition, there is no evidence of a current disability nor is there any indication that the Veteran had a spine condition in service. With respect to the headaches, there is no evidence establishing an "in-service event" and therefore, there is no evidence of an indication that the current disability or current symptoms may be related to the in-service event. 

Thus, the Board finds that referral of these claims for an examination to obtain a medical opinion under the circumstances here presented would be a useless act. The duty to assist is not invoked, even under McLendon, as here the evidence fails the McLendon analysis for these two claims. There is no competent evidence of an event, injury, or disease occurred in service or that otherwise indicates possible relationships to service. Since "no reasonable possibility exists that such assistance would aid in substantiating the claims," a remand for further development is not warranted. 38 U.S.C.A. § 5103A(a)(2)

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in the development of his claims. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001). 


Pertinent Law and Regulations

In order to establish service connection, the facts, as shown by evidence, must demonstrate that a disease or injury resulting in current disability was incurred during service or, if pre-existing active service, was aggravated therein. 38 U.S.C.A. §§ 1110, 1131. 

That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). 

Service connection may also be granted for a disability initially diagnosed after service when all of the evidence shows it to have been incurred in service. 38 C.F.R. § 3.303(d). 

Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Once the evidence has been assembled, it is the Board's responsibility to evaluate the evidence. 38 U.S.C.A. § 7104(a). The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 


Analysis

Spine

The Veteran filed a claim for service connection for a crushed vertebrae in his spine in May 2008. He asserts that he was treated for this condition in 1975 during active duty. He believes that he should be service connected for this condition.

Service treatment records, to include the entrance and separation examinations, show that the Veteran did not have any complaints, diagnoses, or treatment for any spine or back problems during service. In March 1977, he was seen for left elbow, left hip, and left knee complaints after falling down a hill. However, the separation examination disclosed that the spine, musculoskeletal system, and neurological system were normal. His head, neck and extremities were also evaluated as normal. 

Post-service treatment records show that the Veteran complained of back pain in the late 1980s. X-ray studies were performed in September and October 1988 of his cervical, thoracic and lumbosacral spine. Results showed that the Veteran's spine had a normal curvature and was normal in alignment. His vertebral bodies were intact and disc spaces were well-maintained. There was a full ROM noted with no spine tenderness. The X-ray studies confirmed that the Veteran had a normal cervical, thoracic and lumbosacral spine. The March 1989 X-ray studies for the cervical spine again confirmed normal findings. 

Post-service medical records note that the Veteran sustained various injuries to his back. A 1989 report indicated that the Veteran sustained an industrial back injury in September 1988. In January 1990, the Veteran reported sustaining a fall at work which impacted his back. The physician noted that he had a muscle strain to his cervical spine. A June 1991 medical examination report for the Department of Motor Vehicles revealed that the Veteran was involved in an automobile accident in September 1989. This report revealed that the Veteran had a pinched nerve between the sixth and seventh vertebra, but the physician indicated that there was no current condition or limitation. In July 2002, the Veteran sustained a work injury to his back by lifting a fence post. He reported a sudden onset of mid-back pain with muscular spasms and was unable to work for several weeks. In August 2002, the physician assessed him with having cervical and thoracic back pain, but noted that the condition was improving. Treatment notes also indicate that the Veteran was not interested in physical therapy or chiropractic treatment for his back strain. 

A June 2008 VA treatment record indicates that the Veteran complained of chronic mid to low back pain (with low back pain radiating to both legs). He sought a refill of his pain medication. There was no diagnosis or assessment of the Veteran's claimed back pain. The physician prescribed home remedies and medication to ease his pain. A generated problem list did not include a chronic back problem. It did, however, indicate a recent history of malingering. 

An April 2008 VA emergency treatment note reveals that the Veteran complained of chronic back pain and sought refill of his medications. He mentioned a history of a crushed vertebrae in his spine. There was no accompanying diagnosis of a back or spine disorder.

The existence of a current disability due to a disease or injury is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1110; see Degmetich v. Brown, 104 F. 3d 1328 (1997) (holding that interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary). The Federal Circuit provides, that for veterans, basic entitlement to disability compensation derives from two statutes, both found in title 38, sections 1110 and 1131 - the former related to wartime disability compensation and the latter related to peacetime disability compensation. Both statutes provide for compensation, beginning with the following words, "For disability resulting from personal injury suffered or disease contracted in the line of duty ...." 38 U.S.C.A. §§ 1110, 1131. Thus, in order for a veteran to qualify for entitlement to compensation under those statutes, the veteran must prove existence of a disability, and one that has resulted from disease or injury that occurred in the line of duty. Sanchez-Benitez v. Principi, 259 F.3d 1356 (2001). 

At no time during the current appeal has the Veteran been diagnosed with a spine or back disease or injury. The Veteran has reported symptoms such as back pain to his VA physicians in 2008, which he is competent to report because this requires only personal knowledge as it comes to him through his senses. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

The Veteran has been accorded ample opportunity to present evidence in support of his claim, i.e., a competent evidence of a disease or a residual of an injury of the spine. He has failed to do so. See 38 U.S.C.A. § 5107(a) (it is the claimant's responsibility to support a claim for VA benefits). 

The Court has held that "[t]he duty to assist is not always a one-way street. If a Veteran wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

In the absence of a competent diagnosis of a disease or residual of an injury of the spine at any time during the appeal period, service connection may not be granted. See Degmetich v. Brown, 104 F.3d 1328 (Fed. Cir. 1997) & Gilpin v. Brown, 155 F.3d 1353 (Fed. Cir. 1998) (service connection cannot be granted if the claimed disability does not exist); see also McClain v. Nicholson, 21 Vet. App. 319 (2007). 

Furthermore, the Board notes that the competent objective evidence of record demonstrates that the back strain or injuries accounted for in the period from 1988 through 2002 is not due to any event in service. Instead, the record is clear that the Veteran sustained injuries to his back during that time period due to work-related accidents or an automobile accident. There was no mention of any claimed injury sustained in service during the course of treatment for the Veteran's back injuries from 1988 through 2002. 

The Veteran has reported that he had a crushed vertebrae during service. The record does establish a fall and hip injury occurred during service. However, his spine, musculoskeletal system and neurological system were normal at separation. Furthermore, repeated post-service X-ray studies were normal. Such repeated normal findings are inconsistent with a crushed vertebrae and inconsistent with residuals of an in-service injury. To the extent that he reports that he has residuals of an in-service injury, the Board finds that the normal separation examination and the repeated evidence demonstrating post-service conditions to be due to post-service events to be far more credible than his recent claim.

Thus, Board finds that the preponderance of the evidence is against the Veteran's claim of service connection for a spine condition, and the claim must be denied.


Headaches

The Veteran believes that he should be service connected for headaches, which he reported on his claim form to have begun in 2006. At no time during the pendency of the appeal has the Veteran claimed that he has had chronic headaches since service. 

Service treatment records, to include entrance and separation examinations, show the Veteran did not suffer from chronic headaches or migraines in service. Although the Veteran reported symptoms of headaches, sore throat, and dizziness in November 1976, the record is clear that the headaches were a symptom in connection with a noted diagnosis of an upper respiratory infection. There were no further indications of headaches during service or reported upon separation of service. 

Post-service VA treatment records indicate that the Veteran complained of headaches and migraines in 2008. A February 2008 psychiatric outpatient note reveals that the Veteran complained of anxiety symptoms for the last six months to include, among others, constant headaches. He personally related the onset of such symptoms to being incarcerated for 6 months. He reported having "completely lost it" when he was incarcerated, hence attributing the onset of these symptoms to his situation. From about March 2008 to June 2008, migraines were noted on the Veteran's medical problem list, as was the indication of malingering. 

The Board also notes that there is no competent nexus opinion supporting the contention that the Veteran is suffering from chronic headaches that are due to any event or incident in service. 

Here, the Veteran has not claimed in-service chronicity or continuity. Rather, principles of administrative regularity dictate a presumption that government officials have property discharged their duties. See Ashley v. Derwinski, 2 Vet. App. 307, 308-09 (1992). The Veteran's own statements do not rebut the presumption. See id. at 309 (finding the presumption of regularity is not absolute; it may be rebutted by the submission of "clear evidence to the contrary.").

Therefore, for these reasons, the Board finds that service connection for headaches is not warranted.


ORDER

Service connection for a spine condition is denied.

Service connection for headaches is denied.


REMAND

The Veteran claims entitlement to service connection for PTSD. Establishing such entitlement requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f).

Prior to the recent amendment to the regulations, where a determination was made that the Veteran did not engage in combat with the enemy, or the claimed stressor was not related to combat, the Veteran's lay testimony alone was insufficient to establish the occurrence of the alleged stressor. Moreau v. Brown, 9 Vet. App. 389, 395 (1996). In such cases, service records or other corroborative evidence were required to substantiate or verify the Veteran's testimony or statements as to the occurrence of the claimed stressor. However, effective July 13, 2010, 38 C.F.R. § 3.304(f) was amended to reduce the evidentiary burden of establishing a stressor when it is related to a fear of hostile military or terrorist activity. 75 Fed. Reg. 39843 -01 (July 13, 2010). That amendment is relevant to the present case and readjudication of the claim should therefore include consideration of this regulatory amendment.

The amendment provides that, if a stressor claimed by a veteran is related to the veteran's fear of hostile military activity, and a VA psychiatrist confirms that the claimed stressor is adequate to support a diagnosis of PTSD, a veteran's lay testimony alone may establish the occurrence of the claimed in-service stressor, as long as the claimed stressor is consistent with the places, types, and circumstances of the veteran's service and there is no clear and convincing evidence to the contrary. " Fear of hostile military activity" is defined to mean that a veteran experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, and the veteran's response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror.

Service treatment records show that the Veteran did not have any psychiatric disorders noted during service and upon separation from service. Rather, the psychiatric evaluation was normal.

Post-service VA treatment records from 2008 show that the Veteran complained of depression and anxiety. Around January and February of 2008, the Veteran underwent a psychiatric initial assessment at the VA San Francisco medical facility as he believed that he had PTSD. The examiner noted no history of previous psychiatric treatment, but there was a positive history for drug and alcohol abuse. The Veteran reported that he felt disassociated from people and has been afraid of people since the military. He averred that he killed several people, including families, "like a machine" in Vietnam. The Veteran claimed that he had combat-related trauma. Based on his reporting of symptomatology, the examiner diagnosed the Veteran with PTSD. 

In May 2008, the Veteran underwent a psychiatric evaluation at the VA in Ukiah. The Veteran reported having a history of depression and anxiety symptoms. The examiner ultimately diagnosed the Veteran with adjustment disorder related to his current family situation. The examiner ruled out depressive disorder and anxiety disorder. There was no mention of PTSD during this visit.

The Veteran's military personnel file, to include his DD Form 214, reveals that the Veteran was not a recipient of any combat awards or decorations. His military occupational specialty (MOS) was rifleman, but the objective evidence does not indicate that the Veteran engaged in combat with the enemy. 

The PTSD regulations envision PTSD based on a specific "stressor," and the recent amendment envisions fear of hostile military activity due to such a stressor. The Veteran has not identified such a specific stressor, as opposed to the general combat experiences (e.g. killing like a machine) on which the VA psychiatrist based his diagnosis. The Veteran did not fill out the PTSD questionnaire sent to him by the RO. Given the diagnosis of PTSD in 2008 based on the Veteran's statements to his psychiatrist, along with the recent amendment regarding PTSD due to fear of hostile military activity, the Board finds that the Veteran should be given another opportunity to provide specific details regarding a particular stressor or stressors. If he does so, a VA examination with a psychologist or psychiatrist should be provided to determine whether the Veteran's PTSD is based on such specific stressor or stressors and the fear of hostile military activity caused by such stressor or stressors.

The RO should also obtain and associate with the claims file all relevant outstanding VA treatment records since 2008. The Board emphasizes that records generated by VA facilities that may have an impact on the adjudication of a claim are considered constructively in the possession of VA adjudicators during the consideration of a claim, regardless of whether those records are physically on file. See Dunn v. West, 11 Vet. App. 462, 466-67 (1998); Bell v. Derwinski, 2 Vet. App. 611, 613 (1992).

Accordingly, the case is REMANDED for the following action:

1. The Agency of Original Jurisdiction should ascertain the Veteran's dates of service in Vietnam.

2. The RO/AMC should obtain any and all outstanding private and VA records of evaluation and/or treatment for PTSD from 2008 to present day. 

3. Send the Veteran a PTSD questionnaire that requests information regarding specific claimed stressors.

4. If the Veteran identifies one or more stressors that could have caused fear of hostile military activity, schedule a VA PTSD examination by a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted.

The examination request should be made in light of the new amendment to the PTSD regulations and should ask if the claimed stressor is adequate to support a diagnosis of PTSD and the Veteran's symptoms are related to the claimed stressor, including fear of hostile military activity.

5. Review the additional evidence and readjudicate the claim under all appropriate statutory and regulatory provisions and legal theories, including the recent amendment pertaining to PTSD claim discussed above.

6. If upon completion of the above action any benefit sought remains denied, the case should be returned to the Board after compliance with requisite appellate procedures.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).


____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs