Citation Nr: 1612315
Decision Date: 02/04/16 Archive Date: 04/01/16

DOCKET NO. 10-42 014 ) DATE FEB 04 2016
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for diabetes mellitus type II, including as due to herbicides exposure.

2. Entitlement to service connection for hepatitis C.


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

B. Isaacs, Associate Counsel




INTRODUCTION

The Veteran served on active duty from June 1972 to April 1973.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from August 2008 and March 2009 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

The issue of service connection for hepatitis C is addressed in the REMAND portion of the decision below and is REMANDED to the agency of original jurisdiction.  VA will notify the Veteran if further action is required.


FINDING OF FACT

The Veteran does not have a current diagnosis of diabetes mellitus type II.


CONCLUSION OF LAW

The criteria for service connection for diabetes mellitus type II have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.309 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015).

Standard June 2007 and January 2008 letters satisfied the duty to notify provisions.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. 
§ 5103A; 38 C.F.R. § 3.159(c).

The Veteran’s service treatment and personnel records have been obtained.

Post-service VA treatment records were obtained. Also, substance abuse treatment records from May 1996 to May 1999, from the Florida Department of Health were obtained. Additionally, the Veteran was provided a VA examination in December 2009 for his hepatitis C condition.

Although a VA medical examination or opinion was not provided in connection with the diabetes mellitus claim, the Board finds that one is not necessary to make a decision on the claim. As explained in the analysis section below, the record does not contain medical evidence of a current diagnosed disability or persistent or recurrent symptoms of the disability. See 38 U.S.C.A. § 5103A(d) (West 2014); 38 C.F.R. § 3.159(c)(4) (2015); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

II. Service Connection Claim

Legal Criteria

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2015). “To establish a right to compensation for a present disability, a veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service”—the so-called “nexus” requirement.” Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Congress specifically limits entitlement to service connection for disease or injury to cases where there is a disability. In the absence of proof of current disability due to disease or injury there can be no valid claim. 38 U.S.C.A. § 1110 (West 2014); see Sanchez-Benitez v. Principi, 259 F.3d 1356, 1361 (2001); see also Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

A veteran who served in the Republic of Vietnam during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 U.S.C.A. § 1116(f) (West 2014).

If a veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam Era (from January 9, 1962 to May 7, 1975), has one of a list of diseases associated with exposure to certain herbicide agents [to include Agent Orange], then that disease shall be considered to have been incurred in or aggravated by such service, notwithstanding that there is no record of evidence of such disease during the period of such service. The list of diseases includes type II diabetes mellitus. See 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e), 3.313.

Lay evidence may, in some circumstances, establish a medical diagnosis, causation or etiology, i.e., when a layperson (1) is competent to identify the medical condition, (2) is reporting a contemporaneous medical diagnosis, or (3) describes symptoms at the time which supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (2007). Competent medical evidence is required when the determinative issue is either medical etiology or medical diagnosis. Although a lay person is competent in certain situations to provide a diagnosis of a simple condition, a lay person is not competent to provide evidence as to more complex medical questions. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

Analysis

The Veteran seeks service connection for diabetes mellitus type II, due to herbicide exposure during service in Vietnam. He alleged in an April 2009 statement that he has diabetes mellitus type II, secondary to herbicide exposure during service in Vietnam. However, for the reasons explained below, the Board finds that the evidence of record does not demonstrate that the Veteran has a current diabetes mellitus type II disability. 

The Veteran’s service treatment records are absent of complaints or treatment for diabetes mellitus. The Veteran’s post-service VA treatment records do not diagnose diabetes mellitus. Throughout his ongoing treatment with the VA, diabetes mellitus was not found or discussed in a competent report. In VA treatment records from April 1999, June 2003 and June 2009, diabetes mellitus was not found.

VA treatment records show the Veteran did report diabetes in his medical history, to the examiners in March 2005 and September 2007 records. However, these notations are based on the Veteran’s lay statements and are uncorroborated by any medical evidence. The Veteran is not competent to diagnose diabetes mellitus as it is a medically complex disease and he does not have the requisite medical expertise or training. See Jandreau v. Nicholson, 492 F. 3d 1372, 1377 (Fed. Cir. 2007). Thus, the Board is not bound to accept these uncorroborated accounts of a prior diagnosis of diabetes. See Kowalski v. Nicholson, 19 Vet. App. 171, 179 (2005); see also Collier v. Derwinski, 1 Vet. App. 413, 417 (1991).

VA treatment records from June 2008 show a diagnosis of diabetes insipidus and nighttime polyuria. These symptoms were found to have been caused by lithium, which the Veteran took for his psychiatric symptoms. All VA treatment records after June 2008 are absent of a diagnosis or complaints of diabetes mellitus. Furthermore, diabetes mellitus type II was not diagnosed by a medical professional at any point during the appeal period. Diabetes insipidus and nighttime polyuria were temporarily diagnosed, and are separate conditions from diabetes mellitus type II. See 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307(a)(6)(iii), 3.309(e), 3.313.

After a review of the record, the Board finds that the preponderance of the evidence is against the claim for service connection for diabetes mellitus type II. There is no competent medical evidence of record that provides a diagnosis of diabetes mellitus type II, nor is there any evidence of persistent or recurrent symptoms of diabetes mellitus type II. The record shows the Veteran has been treated for numerous medical and psychiatric conditions since at least 2002 and has received multiple tests, including repeated laboratory tests, and none of the results have indicated the Veteran has diabetes mellitus type II. Thus, the Board finds the Veteran does not have a current diabetes mellitus type II disability. There is no doubt to be resolved; service connection for diabetes mellitus type II is not warranted. 38 U.S.C.A. §5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2015).


ORDER

Service connection for diabetes mellitus type II is denied.


REMAND

The Veteran contends in an April 2009 statement, that he acquired hepatitis C due to air gun inoculations in service.

The Veteran was afforded a VA hepatitis examination in December 2009. The examiner concluded that the Veteran’s hepatitis C was not related to service, and was more likely the result of his polysubstance use after service. The examiner indicated that there is no concrete evidence that air gun injections in service can transmit hepatitis C. When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). A new VA hepatitis examination must be scheduled.

In general, for service connection to be granted for hepatitis C, the evidence must show that a veteran’s hepatitis C infection, risk factor(s), or symptoms were incurred in or aggravated by service. The evidence must further show by competent medical evidence that there is a relationship between the claimed in-service injury and the veteran’s hepatitis C. Risk factors for hepatitis C include intravenous (IV) drug use, blood transfusions before 1992, hemodialysis, intranasal cocaine, high-risk sexual activity, accidental exposure while a health care worker, and various kinds of percutaneous exposure such as tattoos, body piercing, acupuncture with non-sterile needles, shared toothbrushes or razor blades. See VBA letter 211B (98-110) November 30, 1998.

A VA Fast Letter (FL) issued in June 2004 (FL 04-13, June 29, 2004) identified “key points” that included the fact that hepatitis C is spread primarily by contact with blood and blood products, with the highest prevalence of hepatitis C infection among those with repeated, direct percutaneous (through the skin) exposure to blood (i.e., intravenous drug users, recipients of blood transfusions before screening of the blood supply began in 1992, and hemophiliacs treated with clotting factor before 1987). Another “key point” was the fact that hepatitis C can potentially be transmitted with the reuse of needles for tattoos, body piercing, and acupuncture. It was concluded in FL 04-13 that the large majority of hepatitis C infections can be accounted for by known modes of transmission, primarily transfusion of blood products before 1992, and injection drug use. Additionally, the FL noted that while there is at least one case report of hepatitis B being transmitted by an air gun injection, there have been no case reports to date of hepatitis C being transmitted via air gun injection. However, the letter goes on to state that despite the lack of any scientific evidence to document transmission of hepatitis C by air gun injectors, it is biologically plausible. Id.

A new VA examination should be obtained to address the relative likelihood of the Veteran contracting hepatitis C, in service by air gun inoculation versus after service by other means listed above, including polysubstance use. In addition, the examiner should address any other potential in-service or post-service risk factors that may have led to the Veteran contracting hepatitis C.

Updated VA treatment records must also be obtained. 38 C.F.R. § 3.159(c)(2); Bell v. Derwinski, 2 Vet. App. 611 (1992).

Accordingly, the case is REMANDED for the following actions:

1. Obtain VA treatment records since January 2011.

2. Schedule the Veteran for a VA hepatitis examination by an appropriate medical professional. The entire record, to include all electronic files, must be reviewed by the examiner. 

The examiner is to conduct all indicated tests, review the evidence of record, and provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran’s current hepatitis C is related to his service, to include exposure to air gun inoculations.

In making this assessment, the examiner is to consider VBA Fast Letter 04-13 (June 29, 2004) and any other pertinent medical data and/or medical literature related to air gun inoculations leading to hepatitis C exposure.

Additionally, the examiner should discuss any other relevant medical or lay evidence, to include any other potential risk factors for hepatitis C exposure the Veteran experienced.

The examination report must include a complete rationale for all opinions expressed. 

3. Then, readjudicate the appeal. If any of the benefits sought remain denied, issue a supplemental statement of the case and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
M. HYLAND
Veterans Law Judge, Board of Veterans’ Appeals




Department of Veterans Affairs

YOUR RIGHTS TO APPEAL OUR DECISION

The attached decision by the Board of Veterans' Appeals (BVA or Board) is the final decision for all issues addressed in the "Order" section of the decision. The Board may also choose to remand an issue or issues to the local VA office for additional development. If the Board did this in your case, then a "Remand" section follows the "Order." However, you cannot appeal an issue remanded to the local VA office because a remand is not a final decision. The advice below on how to appeal a claim applies only to issues that were allowed, denied, or dismissed in the “Order.”

If you are satisfied with the outcome of your appeal, you do not need to do anything. We will return your file to your local VA office to implement the BVA's decision. However, if you are not satisfied with the Board's decision on any or all of the issues allowed, denied, or dismissed, you have the following options, which are listed in no particular order of importance: 

* Appeal to the United States Court of Appeals for Veterans Claims (Court)
* File with the Board a motion for reconsideration of this decision
* File with the Board a motion to vacate this decision 
* File with the Board a motion for revision of this decision based on clear and unmistakable error. 

Although it would not affect this BVA decision, you may choose to also: 

* Reopen your claim at the local VA office by submitting new and material evidence. 

There is no time limit for filing a motion for reconsideration, a motion to vacate, or a motion for revision based on clear and unmistakable error with the Board, or a claim to reopen at the local VA office. None of these things is mutually exclusive - you can do all five things at the same time if you wish. However, if you file a Notice of Appeal with the Court and a motion with the Board at the same time, this may delay your case because of jurisdictional conflicts. If you file a Notice of Appeal with the Court before you file a motion with the BVA, the BVA will not be able to consider your motion without the Court's permission. 

How long do I have to start my appeal to the court? You have 120 days from the date this decision was mailed to you (as shown on the first page of this decision) to file a Notice of Appeal with the Court. If you also want to file a motion for reconsideration or a motion to vacate, you will still have time to appeal to the court. As long as you file your motion(s) with the Board within 120 days of the date this decision was mailed to you, you will have another 120 days from the date the BVA decides the motion for reconsideration or the motion to vacate to appeal to the Court. You should know that even if you have a representative, as discussed below, it is your responsibility to make sure that your appeal to the Court is filed on time. Please note that the 120-day time limit to file a Notice of Appeal with the Court does not include a period of active duty. If your active military service materially affects your ability to file a Notice of Appeal (e.g., due to a combat deployment), you may also be entitled to an additional 90 days after active duty service terminates before the 120-day appeal period (or remainder of the appeal period) begins to run. 

How do I appeal to the United States Court of Appeals for Veterans Claims? Send your Notice of Appeal to the Court at:

Clerk, U.S. Court of Appeals for Veterans Claims
625 Indiana Avenue, NW, Suite 900
Washington, DC 20004-2950

You can get information about the Notice of Appeal, the procedure for filing a Notice of Appeal, the filing fee (or a motion to waive the filing fee if payment would cause financial hardship), and other matters covered by the Court's rules directly from the Court. You can also get this information from the Court's website on the Internet at: http://www.uscourts.cavc.gov, and you can download forms directly from that website. The Court's facsimile number is (202) 501-5848. 

To ensure full protection of your right of appeal to the Court, you must file your Notice of Appeal with the Court, not with the Board, or any other VA office. 

How do I file a motion for reconsideration? You can file a motion asking the BVA to reconsider any part of this decision by writing a letter to the BVA clearly explaining why you believe that the BVA committed an obvious error of fact or law, or stating that new and material military service records have been discovered that apply to your appeal. It is important that such letter be as specific as possible. A general statement of dissatisfaction with the BVA decision or some other aspect of the VA claims adjudication process will not suffice. If the BVA has decided more than one issue, be sure to tell us which issue(s) you want reconsidered. Issues not clearly identified will not be considered. Send your letter to: 

Director, Management, Planning and Analysis (014)
Board of Veterans' Appeals
810 Vermont Avenue, NW
Washington, DC 20420


VA FORM
MAR 2015
 4597
Page 1
CONTINUED ON NEXT PAGE


Remember, the Board places no time limit on filing a motion for reconsideration, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision. 

How do I file a motion to vacate? You can file a motion asking the BVA to vacate any part of this decision by writing a letter to the BVA stating why you believe you were denied due process of law during your appeal. See 38 C.F.R. 20.904. For example, you were denied your right to representation through action or inaction by VA personnel, you were not provided a Statement of the Case or Supplemental Statement of the Case, or you did not get a personal hearing that you requested. You can also file a motion to vacate any part of this decision on the basis that the Board allowed benefits based on false or fraudulent evidence. Send this motion to the address above for the Director, Management, Planning and Analysis, at the Board. Remember, the Board places no time limit on filing a motion to vacate, and you can do this at any time. However, if you also plan to appeal this decision to the Court, you must file your motion within 120 days from the date of this decision. 

How do I file a motion to revise the Board's decision on the basis of clear and unmistakable error? You can file a motion asking that the Board revise this decision if you believe that the decision is based on "clear and unmistakable error" (CUE). Send this motion to the address above for the Director, Management, Planning and Analysis, at the Board. You should be careful when preparing such a motion because it must meet specific requirements, and the Board will not review a final decision on this basis more than once. You should carefully review the Board's Rules of Practice on CUE, 38 C.F.R. 20.1400 -- 20.1411, and seek help from a qualified representative before filing such a motion. See discussion on representation below. Remember, the Board places no time limit on filing a CUE review motion, and you can do this at any time. 

How do I reopen my claim? You can ask your local VA office to reopen your claim by simply sending them a statement indicating that you want to reopen your claim. However, to be successful in reopening your claim, you must submit new and material evidence to that office. See 38 C.F.R. 3.156(a). 

Can someone represent me in my appeal? Yes. You can always represent yourself in any claim before VA, including the BVA, but you can also appoint someone to represent you. An accredited representative of a recognized service organization may represent you free of charge. VA approves these organizations to help veterans, service members, and dependents prepare their claims and present them to VA. An accredited representative works for the service organization and knows how to prepare and present claims. You can find a listing of these organizations on the Internet at: http://www.va.gov/vso/. You can also choose to be represented by a private attorney or by an "agent." (An agent is a person who is not a lawyer, but is specially accredited by VA.) 

If you want someone to represent you before the Court, rather than before the VA, you can get information on how to do so at the Court’s website at: http://www.uscourts.cavc.gov. The Court’s website provides a state-by-state listing of persons admitted to practice before the Court who have indicated their availability to the represent appellants. You may also request this information by writing directly to the Court. Information about free representation through the Veterans Consortium Pro Bono Program is also available at the Court’s website, or at: http://www.vetsprobono.org, mail@vetsprobono.org, or (855) 446-9678.

Do I have to pay an attorney or agent to represent me? An attorney or agent may charge a fee to represent you after a notice of disagreement has been filed with respect to your case, provided that the notice of disagreement was filed on or after June 20, 2007. See 38 U.S.C. 5904; 38 C.F.R. 14.636. If the notice of disagreement was filed before June 20, 2007, an attorney or accredited agent may charge fees for services, but only after the Board first issues a final decision in the case, and only if the agent or attorney is hired within one year of the Board’s decision. See 38 C.F.R. 14.636(c)(2). 

The notice of disagreement limitation does not apply to fees charged, allowed, or paid for services provided with respect to proceedings before a court. VA cannot pay the fees of your attorney or agent, with the exception of payment of fees out of past-due benefits awarded to you on the basis of your claim when provided for in a fee agreement. 

Fee for VA home and small business loan cases: An attorney or agent may charge you a reasonable fee for services involving a VA home loan or small business loan. See 38 U.S.C. 5904; 38 C.F.R. 14.636(d). 

Filing of Fee Agreements: In all cases, a copy of any fee agreement between you and an attorney or accredited agent must be sent to the Secretary at the following address: 
Office of the General Counsel (022D)
810 Vermont Avenue, NW
Washington, DC 20420

The Office of General Counsel may decide, on its own, to review a fee agreement or expenses charged by your agent or attorney for reasonableness. You can also file a motion requesting such review to the address above for the Office of General Counsel. See 38 C.F.R. 14.636(i); 14.637(d).


VA FORM
MAR 2015 
 4597
Page 2
SUPERSEDES VA FORM 4597, APR 2014, 
 WHICH WILL NOT BE USED