**Jose A. SANCHEZ–BENITEZ, Claimant–Appellant,**

**v.**

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

No. 00–7099.

United States Court of Appeals, Federal Circuit.

Aug. 3, 2001.

Linda E. Blauhut, Paralyzed Veterans of America, of Washington, DC, argued for claimant appellant. With her on the brief was Michael P. Horan.

Gregory T. Jaeger, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel, and Martie Adelman, Attorney, Department of Veterans Affairs, of Washington, DC.

Before MAYER, Chief Judge, LOURIE, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Jose A. Sanchez–Benitez appeals from the decision by the Court of Appeals for Veterans Claims ("Veterans Court") on December 29, 1999, affirming the denial by the Board of Veterans' Appeals ("Board") of his claims for service connection for a neck disability and increased rating for a low back claim. *Sanchez–Benitez v. West,* 13 Vet.App. 282 (1999). We dismiss-in-part, vacate-in-part, and remand.

I

Mr. Sanchez–Benitez served in the Army for fifteen years, from July 1979 to July 1994. No preexisting conditions were noted on his entrance exam. In August 1989, he sought medical treatment for what his service medical records describe as neck pain of two months' duration with no history of trauma. A cervical spine x-ray taken at that time was normal. In January 1992, Mr. Sanchez–Benitez began complaining of low back pain after lifting heavy equipment. His medical records indicate ongoing complaints of low back pain until his discharge.

At the time of his separation from service, Mr. Sanchez–Benitez submitted a claim for service connection for a "low back injury" beginning in January 1992 and "neck pain" beginning in August 1989. The Regional Office ("RO") of the Department of Veteran Affairs ("VA") in Wichita, Kansas, granted service connection for the "lower back injury" and rated it at 10 percent disabling. Service connection for the "neck pain," however, was denied based on the lack of evidence of a pathological neck disorder. Mr. Sanchez–Benitez appealed the decision on both claims and was afforded a hearing in December 1994.

After taking testimony from Mr. Sanchez–Benitez, the hearing officer ordered a medical examination, which took place in January 1995. Although his x-rays turned up "normal" during this medical examination, Mr. Sanchez–Benitez gave an account to the medical examiner of his history of back and neck pain. He also informed the

physician of an on-the-job neck injury that allegedly took place in 1983, when a large metal bumper was dropped on his neck. Consequently, the medical examiner recorded diagnoses of "lumbar muscle strain" (for the low back pain) and "[h]istory of trauma to the cervical area with residual pain" (for the neck pain). Mr. Sanchez–Benitez's low back disability rating was subsequently increased to 20 percent by the hearing officer. However, service connection for neck pain was again denied.

In June 1996, the Board determined on appeal that further development was necessary for both the neck and low back claims, and remanded the case for additional medical testing and examinations. Specifically, the Board requested that an opinion be provided "by the orthopedist regarding the likelihood of a relationship between the neck symptomatology noted in service and any current cervical spine pathology."

During the subsequent neurological examination in July 1996, Mr. Sanchez–Benitez again provided a history of episodic low back pain, and neck pain stemming from his alleged 1983 in-service injury. With regard to the neck, the examiner found tenderness at discs C5–C6, no evidence of radiculopathy, and normal "bulk, tone, [and] power" with no evidence of muscle wasting or motor weakness. As to the low back, the examiner found tenderness at discs L5–S1, some decreased sensation of the left thigh, and low back pain upon bending. The examiner noted that cervical spine x-rays performed in early July 1996 showed minimal narrowing and slight reversal of lordosis at discs C2–C3, and that lumbar spine x-rays revealed minimal degenerative changes and narrowing of the spaces at discs L4–L5 and L5–S1. The examiner ultimately diagnosed slight reversal of lordosis at C2–C3, lumbosacral sprain, and left L5 radiculopathy.

Mr. Sanchez–Benitez also underwent a spinal examination in July 1996. The orthopedic examiner noted three sets of cervical spine x-rays: (1) the January 1995 x-rays, which were normal; (2) the early July 1996 x-rays, which showed "very small and early osteophyte on the anterior aspect of C6," good disc spaces, normal "neural foramina," and "no arthritis or evidence of trauma"; and (3) the late July 1996 x-rays, which were found to be "entirely normal." The lumbar spine x-rays consistently showed osteophytes on L4 and L5. After conducting a physical examination, the orthopedic examiner determined that Mr. Sanchez–Benitez was able to carry out the duties of his job, and concluded that "[t]he physical findings and the radiologic findings do not reveal a definite or specific cause of the complaints in the neck and low back. Therefore, I am not able to correlate well the complaint of chronic pain with the clinical findings."

In August 1996, a magnetic resonance image ("MRI") was conducted on Mr. Sanchez–Benitez's cervical (neck) and lumbar (low back) spine. The MRI report showed degenerative disc disease with mild bulging in the lumbar spine, but came up negative with regard to the cervical area. The August 1996 report of VA electromyography ("EMG") and nerve conduction velocity ("NCV") studies of Mr. Sanchez–Benitez's neck and back showed no definite abnormalities.

After all the examinations were completed, the Board found that the preponderance of the evidence was against Mr. Sanchez–Benitez's claims for service connection for a neck disability and an enhancement in the rating for his low back disability. Concerning the neck disability, the Board noted the VA orthopedic examiner's statement that clinical and radiologic findings did not reveal a source or cause of the veteran's complaints of neck pain,

nor did the clinical findings substantiate the veteran's belief that his neck pain was secondary to lower back pain. In the absence of evidence that Mr. Sanchez–Benitez had a neck disability that was shown by medical records to be related to an in-service injury, the Board denied his claims for service connection for a neck disability. Regarding the low back disability, the Board evaluated the veteran's claim under 38 C.F.R. § 4.71a, Diagnostic Code 5293 (1998) ("DC 5293") (intevertebral disc syndrome). The Board considered the tenderness and the discomfort experienced by the veteran during his physical examination, but concluded that a rating higher than 20 percent was not warranted. In doing so, it stated that "[t]he nature of the original injury has been reviewed and the functional impairment that can be attributed to pain or weakness has been taken into account," citing 38 C.F.R. § 4.40 (addressing functional loss and limitation of motion due to pain on use) and 38 C.F.R. § 4.45 (requiring inquiry into weakened movement, excessive fatigability, incoordination, pain on movement, and limitation of motion).

Mr. Sanchez–Benitez appealed to the Veterans Court. With respect to his claim for service connection for pain arising from an in-service neck injury, the Veterans Court held that the Board "did not err, on the facts in this case, [in] denying the grant of service connection." In particular, the Veterans Court affirmed the Board's factual finding that "there was not adequate medical evidence of any present disability related to the appellant's service." The Board, as well as the Veterans Court, concluded that the 1995 reference to "history of trauma to the cervical spine area with residual pain" in Mr. Sanchez–Benitez's medical records did not establish a medical connection between the alleged in-service neck injury and Mr. Sanchez–Benitez's currently experienced pain. In short, the Board and the Veterans Court concluded that the record failed to show a connection between the in-service neck trauma incident and Mr. Sanchez–Benitez's current neck pain. Thus, the Veterans Court stated that there is a "plausible basis" in the record for affirmance of the Board's intensely fact-driven denial of service connection for the neck condition.

To be sure, the Veterans Court (unlike the Board) did state that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted." Although Mr. Sanchez–Benitez understands that the Veterans Court's statement about "pain alone" is at most an alternative holding—alternative to the Veterans Court's assessment of the medical evidence as described above—he urges this court to decide his appeal solely on the issue of whether the "pain alone" statement is a correct statement of law.

Regarding the low back disability, the Veterans Court found that the Board's decision had complied with the mandates of an intervening precedential opinion issued by the VA General Counsel addressing DC 5293. The Veterans Court further found no evidence of "exceptional or unusual" circumstances that would render the schedular rating inadequate. Hence, the Veterans Court affirmed the Board's denial of both of Mr. Sanchez–Benitez's claims.

II

We have circumscribed jurisdiction to review the decisions of the Veterans Court pursuant to 38 U.S.C. § 7292(a). We must decide "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1) (Supp. V 1999). Other than determinations as to factual matters, we must hold unlawful and set aside any regulation or interpretation that we find to be

"(A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." *Id.* However, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2) (1994).

As a preliminary matter, Mr. Sanchez–Benitez contends that the Veterans Court's description of a "plausible basis" standard of review was a misapplication of the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4) (1994 & Supp. V 1999). However, in *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), the Supreme Court interpreted "clearly erroneous" for purposes of appellate review of a lower court's fact-finding, an analogous situation to the Veterans Court's review of a Board decision:

> Although the meaning of the phrase "clearly erroneous" is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles ... is that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.... *If the district court's account of the evidence is plausible in light of the record viewed in its entirety,* the court

of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the ˙ evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Id.* at 573–74, 105 S.Ct. 1504 (emphasis added and citations omitted). Where, as here, the Veterans Court's affirmance of the Board's decision was expressly based upon "consideration of the record on appeal, the appellant's original and reply briefs, the Secretary's brief, and oral argument of the parties," we cannot say that its conclusion that there was a "plausible basis in the record for the Board's decision" was a misapplication of the "clearly erroneous" standard of review.

## A

With regard to Mr. Sanchez–Benitez's claim for service connection for his current neck pain, we confront his urging that we reject the view of the Veterans Court that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted." *Sanchez–Benitez*, 13 Vet.App. at 285.

For veterans, basic entitlement to disability compensation derives from two statutes, both found in title 38, sections 1110 and 1131—the former relating to wartime disability compensation and the latter relating to peacetime disability compensation. Both statutes provide for compensation, beginning with the following words: "For disability resulting from personal injury suffered or disease contracted in the line of duty...." 38 U.S.C. §§ 1110, 1131 (1994). Thus, in order for a veteran to qualify for entitlement to compensation under those statutes, the veteran must prove existence of a disability, and one that has

resulted from a disease or injury that occurred in the line of duty.

The VA regulations refer to "pain" in connection with the assessment of the extent to which a veteran may be compensibly disabled. These references are found in Subpart B "Disability Ratings" relating to "[t]he Musculoskeletal System." For example, 38 C.F.R. § 4.40 (2000), relating to "[f]unctional loss," states that the extent of functional loss "may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion...." With respect to "[t]he joints," 38 C.F.R. § 4.45 (2000) states that the extent of joint disability is to be measured, *inter alia,* by "[p]ain on movement...." When evaluating the extent of muscle disabilities, 38 C.F.R. § 4.56 (2000) states that the cardinal signs of muscle disability include "fatigue-pain."

It is thus clear that pain is not wholly irrelevant to the assessment of a disability for which a veteran seeks compensation. In each of the examples cited in the above regulations, pain is considered in connection with assessing the extent of a particular stated disability, *i.e.,* disability being the functional loss of normal body working movements (section 4.40), disability in the joints (section 4.45), and disability of the muscles (section 4.56).

The foregoing regulations were cited by the Veterans Court as supporting its statement that "pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted." *Sanchez–Benitez,* 13 Vet. App. at 285. The necessary reasoning of the Veterans Court is that the regulations demonstrate the only occasions in which pain plays into the assessment of disability. In the view of the Veterans Court, unless a veteran suffers from an underlying disability or condition, such as loss of normal body working movements, joint disability, or muscle disability, then pain otherwise experienced is not a compensable disability.

■ Mr. Sanchez–Benitez presents his challenge to the "pain alone" statement in two iterations. In his opening brief, he suggests that a veteran currently suffering from pain, but without any allegation of an in-service injury or disease to which the pain might be attributed, nonetheless can mount a claim for disability because of the current pain. In an extreme example, this iteration would award disability compensation to a veteran who currently suffers from pain but who candidly admits that he suffered no in-service disease or injury of any kind. We must dismiss that contention out of hand. Absent a disease or injury incurred during service, the veteran cannot satisfy the basic compensation statutes.

In his reply brief and during oral argument, Mr. Sanchez–Benitez refined his argument in a second iteration to meet the tests of the basic compensation statutes. His argument is that under the basic disability statutes, pain alone is a compensable disability, even if the pain cannot be attributed to any current disability. Thus, under Mr. Sanchez–Benitez's view, a veteran who is currently suffering from pain, but who cannot attribute the pain to any particular disability, is nonetheless compensibly disabled.

■ Mr. Sanchez–Benitez presents an interesting, indeed perplexing, question, but not one that we need or can decide in this appeal. Even assuming *arguendo* that free-standing pain wholly unrelated to any current disability is a compensable disability, such pain cannot be compensable in the absence of proof of an in-service disease or injury to which the current pain can be connected by medical evidence. Such a "pain alone" claim must fail when

there is no sufficient factual showing that the pain derives from an in-service disease or injury. In this case, we have a clear fact-finding by the Board, affirmed by the Veterans Court, that Mr. Sanchez–Benitez's current pain cannot be attributed to the neck trauma he experienced while in service. Without a factual finding of a medical nexus between the pain and the neck trauma, we cannot reach the question of whether Mr. Sanchez–Benitez's current pain is statutorily compensable. Our standard of review does not permit us to rearrange the facts so as to present a question of law for appellate review. *See* 38 U.S.C. § 7292(d)(2). Nor are we authorized to issue advisory opinions. We reiterate in conclusion, on this point, that Mr. Sanchez–Benitez recognized, in his reply brief, that the judgment of the Veterans Court in this case rests on alternative grounds: the failure of proof of medical connection of current pain to the alleged in-service neck trauma incident, and the statement in the Veterans Court's opinion that "pain alone" is not compensable.

## B

■ With respect to his low back claim, Mr. Sanchez–Benitez contends that the Veterans Court erred by failing to remand his claim for an increased back disability rating so that the Board could reconsider it in accordance with an intervening VA General Counsel precedent opinion VAOPGCPREC 36–97. He points out that the VAOPGCPREC 36–97 requires: (1) that both 38 C.F.R. § 4.40 and § 4.45 be considered when a disability is evaluated under DC 5293; and (2) that 38 C.F.R. § 3.321(b)(1) be considered if there is any evidence of "exceptional or unusual" circumstances.

The first requirement imposed by the VAOPGCPREC 36–97 is that 38 C.F.R. §§ 4.40 and 4.45 must be considered when a disability is evaluated under DC 5293, as is the case with Mr. Sanchez–Benitez. As noted by the Veterans Court, the Board did consider these two regulations in evaluating the veteran's disabilities and explicitly cited the two sections, stating that "the functional impairment that can be attributed to pain or weakness has been taken into account." Hence, the Veterans Court did not err in concluding that the Board's decision complied with the first requirement of VAOPGCPREC 36–97.

The second requirement imposed by the VAOPGCPREC 36–97 is that 38 C.F.R. § 3.321(b)(1) must be considered "if there is evidence of 'exceptional or unusual' circumstances...." Unlike the first requirement, there is no evidence in the Board's opinion that demonstrates that it considered 38 C.F.R. § 3.321(b)(1). On appeal, the Veterans Court skipped over the fact that the Board did not express an opinion on this issue, and simply noted that it could not identify any facts, on the record or at oral argument, indicating that there were "exceptional or unusual" circumstances involved in this case. It proceeded to affirm the Board's decision, citing as authority one of its own decisions, *Winters v. West,* 12 Vet.App. 203 (1999) (en banc), which held that a "remand is not required in those situations where doing so would result in the imposition of unnecessary burdens on the [Board] without the possibility of any benefits flowing to the appellant." *Id.* at 207. That case, however, was then currently before us on appeal, and we subsequently vacated the decision, remanding with instructions to the Veterans Court to remand to the Board for redetermination. *Winters v. Gober,* 219 F.3d 1375 (2000).

In *Winters,* an intervening change in the law (*i.e.,* our decision in *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998), which relaxed the standard for "material" in the context of "new and material evidence" necessary to re-open a claim) was issued between the

issuance of the Board's decision and the Veterans Court's decision. The Veterans Court in *Winters* simply assumed the evidence was "new and material" and proceeded to analyze the veteran's claim for well-groundedness. We held that the Veterans Court "should not assess whether a claim is well grounded until and unless the DVA rules on the issue after the claim is properly reopened in response to the presentation of new and material evidence, and the issue is properly presented on appeal." *Winters*, 219 F.3d at 1379. The same principle holds true here as well.

The Veterans Court in this case, on its own, found that there was nothing in the record to suggest that Mr. Sanchez–Benitez's case was "exceptional or unusual." However, it is not the role of the Veterans Court to make such factual determinations *sua sponte*. Rather, it should wait until the issue is "properly presented on appeal." *Id.* The government argues that the facts are undisputed in this case, implying that the Veterans Court was merely applying a legal standard to the undisputed facts. Nevertheless, had Mr. Sanchez–Benitez known that the Veterans Court was going to make a determination with regard to the presence of "exceptional or unusual" circumstances or the lack thereof, he could have developed the facts or prepared arguments for presentation to the Veterans Court. Instead, Mr. Sanchez–Benitez primarily argued before the Veterans Court based upon procedural grounds, and was deprived of opportunity to further develop the record in light of the new standards set forth in the VAOPGCPREC 36–97.

### III

Since we are statutorily precluded from reaching the facts of Mr. Sanchez–Benitez's claim for service connection for a neck disability, we dismiss that portion of his appeal. However, because it is plausible that, had his case been properly re-manded to the Board for further determination, Mr. Sanchez–Benitez could have developed the record more fully with respect to his claim for an enhanced back disability rating, we vacate and remand with instructions to the Veterans Court to remand to the Board for redetermination on that portion of his appeal.

DISMISSED–IN–PART, VACATED–IN–PART, and REMANDED

MAYER, *Chief Judge*, dissenting.

I would remand Sanchez–Benitez's claim for neck pain. The Secretary argues that the language of 38 U.S.C. §§ 1110 and 1131 limiting compensation to "disability resulting from personal injury suffered or disease contracted in the line of duty ..." precludes the payment of compensation for "pain alone, without a diagnosed or identifiable underlying malady or condition." The court accepts this conclusion. Sanchez–Benitez argues that the definition of "service-connected" in 38 U.S.C. § 101(16) only requires a disability and a temporal relationship between that disability and active service. The definition does not mention any requirement for a diagnosis of an underlying malady or condition. He also points to a Veterans Court's decision which holds that " 'disability' as used in § 1110 refers to impairment of earning capacity, and that such definition mandates that *any additional impairment* of earning capacity resulting from an already service-connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service-connected condition, shall be compensated." *Allen v. Brown*, 7 Vet.App. 439, 448 (1995) (emphasis in original). He argues persuasively that service connection may be granted as long as the disability can be traced to service, even if the specific onset of the disability cannot be pinpointed. The court labels this argument a

**1364**

"perplexing question, but not one that we need or can decide in this appeal." *Ante* at 1361. The court then goes on to conclude that, even if freestanding pain is a compensable disability, such a claim must fail when there is not a sufficient factual showing that the pain derives from an in-service disease or injury. This standard raises the bar higher than set in *Allen.* I see no reason for this, and the court suggests none.

Sanchez–Benitez also points to 38 C.F.R. § 4.20, which states that "[w]hen an unlisted condition is encountered it will be permissible to rate under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous." The Veterans Court should have remanded to the board for a determination of whether Sanchez–Benitez's neck pain impaired his earning capacity and whether there was an analogous condition to use as a baseline to rate his disability. Its denial of the neck pain claim for failure to prove a specific underlying malady or condition was, therefore, not in accordance with law, rule, or regulation.