# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4349

PAUL G. WAIT, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 23, 2020)                                    Decided August 26, 2020)

*Alyse E. Galoski*, with whom *Amanda Leonard* was on the brief, both of Providence, Rhode Island, for the appellant.

*Sarah W. Fusina*, Deputy Chief Counsel, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Safiya L. Dixon*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, MEREDITH, and FALVEY, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed an opinion concurring in part and dissenting in part.

MEREDITH, *Judge*: The appellant, Paul G. Wait, through counsel appeals a July 19, 2018, Board of Veterans' Appeals (Board) decision that denied entitlement to disability compensation for low back, right hip, and left knee disabilities. Record (R.) at 3-14. The appellant does not raise any argument concerning the Board's denial of disability compensation for low back and left knee disabilities.[1] Therefore, the Court finds that he has abandoned his appeal of these issues and will dismiss the appeal as to the abandoned issues. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Following a single-judge memorandum decision that affirmed the Board's decision, the appellant filed a timely motion for panel decision pursuant to Rule 35(b) of the Court's Rules of Practice and Procedure. Appellant's Motion (Mot.)

---

[1] Although the appellant initially challenged the Board's denial of benefits for a left knee disability, on June 18, 2020, he informed the Court that he is abandoning the issue. *See* June 18, 2020, Notice of Clarification on Abandoned Issue.

for Panel Decision at 1. The Court granted the appellant's motion for panel decision, withdrew its single-judge decision, and allowed both parties to submit additional pleadings addressing the issues raised by the motion: What is necessary for a claimant to demonstrate that "[his or] her pain reaches the level of a functional impairment of earning capacity" to constitute a disability pursuant to *Saunders v. Wilkie*, 886 F.3d 1356, 1368 (Fed. Cir. 2018), and relatedly, whether VA's regulations contemplate, as a matter of law, the level of functional impairment of earning capacity necessary to constitute a disability? For the reasons discussed below, the Court will affirm the Board's decision denying entitlement to disability compensation for a right hip disability.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from January 1986 to January 1989 and from April to June 2008, when he was medically discharged from service. R. at 1442, 1604. He also served in the Army Reserve from 1989 to 1994, including a period of active duty from February to May 1991. R. at 1443, 1447.

A June 10, 2008, service treatment record reflects the appellant's complaint of right hip pain for the past 2 ½ weeks, with pain rated at 7 on a scale of 10 and with pain increasing with activity. R. at 1684. Examination revealed right hip joint pain and stiffness with soft tissue pain, deep pain in the greater trochanter, hip flexor tenderness, and pain on active external rotation, but no hip weakness, dislocation, or tenderness with ambulation. R. at 1684, 1686. Additionally, the appellant complained of right toe pain and deformities and abnormalities of the right toes. R. at 1684, 1686.

A report of medical assessment completed 3 days later includes the appellant's report that his ability to work in his primary military specialty was limited by right foot pain or a bunion. R. at 1592. Later that month, a physician with the Entrance Physical Standards Board recommended that the appellant be separated from service as a result of a right great toe bunion, R. at 1611, and the appellant signed a statement that he was being discharged for right foot pain, R. at 1589.

The appellant filed a claim for disability compensation for a right hip disability in January 2013. R. at 2975. VA treatment records from the following month reflect his complaints of low back and right hip pain that worsens with sitting and standing too long and interferes with his quality of daily life by impacting his sleep, general activity, and mobility, R. at 2818; significant tenderness in his right hip, which he attributes to strenuous training during service in 2008, R. at

2

2810; and "chronic back/left knee/right hip pain from [a] 2008 injury," significant pain that prevented him from sleeping more than intermittently the previous night, and problems sitting due to pain, R. at 2741.

VA treatment records further reflect that, in May 2013, the appellant complained of sharp and aching pain in his right hip that does not tingle or radiate but improves when he walks. R. at 2632-33. During a June 2013 VA pain management consultation, he reported chronic back, right hip, and left leg pain and that symptoms worsen with sitting and lying down. R. at 2513. The examiner's impression was "[r]ight [h]ip pain, normal x-rays." R. at 2516. Later that month, a VA regional office (RO) denied the appellant's claim because there was no evidence of a diagnosed disability. R. at 2480-83. The appellant disagreed with the decision and ultimately perfected an appeal to the Board. R. at 893, 930-58, 2328.

In July and August 2013, he visited an emergency room for chronic pain issues related to left hip pain that radiates to his left knee, localized right hip pain, and lower back pain radiating down both legs, and complained of lower back and left knee pain worsened by sitting and lying down. R. at 296, 1879, 1911. The RO subsequently continued the denial of the appellant's claim. R. at 1831-35. The appellant noted his ongoing disagreement, asserting that his service treatment records show that his right hip condition was "incurred while in service." R. at 1692.

On July 19, 2018, the Board denied entitlement to disability compensation for a right hip disability. R. at 3-14. The Board initially found that "the medical evidence does not reflect a current clinical diagnosis for the [appellant's] right hip" and that, although he is "competent to relate symptomatology such as pain[,] . . . he is not competent to diagnose the condition because he does not possess the requisite medical training or expertise." R. at 8-9. The Board then acknowledged that, under *Saunders*, if "pain alone results in functional impairment that affects earning capacity, . . . it can constitute a disability." R. at 9. However, the Board found that the appellant's right hip pain did not "rise[] to the level of a disability under *Saunders*," explaining as follows:

> While the [appellant] has credibly reported right hip pain since 2013, the Board finds that the pain has at no time been so severe as to cause functional impairment affecting his earning capacity. A May 2013 VA treatment record reported that the [appellant] could walk normally despite his right hip pain, and an August 2013 VA treatment record shows that [he] had normal range of motion for all extremities.

*Id.* The Board concluded that, without a current disability, "there can be no valid claim for service connection." *Id.* This appeal followed.

3

## II. ANALYSIS

### A. Parties' Arguments

In his opening brief, the appellant argued that the Board provided inadequate reasons or bases for concluding that he does not have a current right hip disability because it failed to consider favorable evidence reflecting that his "hip pain was so severe that it impaired his ability to sit, lay down, and sleep" and did not adequately explain why his hip pain does not cause a functional impairment in earning capacity. Appellant's Brief (Br.) at 8-9 (citing R. at 1879, 2513, 2741); *see id.* at 10-11 (citing R. at 296, 362, 2810, 2818). He contended that "[t]he Board's failure to appropriately account for [this evidence of] functional loss . . . was prejudicial . . . because VA has recognized that sitting and sleeping impairments impact earning capacity." *Id.* at 9 (citing 38 C.F.R. § 4.45 (2018) and diagnostic codes contemplating difficulty sleeping).

In response, the Secretary asserted that the Board adequately addressed the postservice treatment records; noted that disability ratings for the hip measure functional impairment in terms of range of motion; and argued that the treatment records do not show hip pain as alleged by the appellant. Secretary's Br. at 4-6. The Secretary urged the Court to affirm the Board's decision.

In his reply brief, the appellant asserted that, pursuant to *Saunders*, pain alone can be a functional impairment. Reply Br. at 1. He further argued that it follows from 38 C.F.R. § 4.59, which instructs that "[t]he intent of the [rating] schedule is to recognize [actually] painful motion with joint or periarticular pathology as productive of [a] disability" and provides for a minimum compensable rating, "that hip pain alone rises to the level of a functional impairment," even if it is unaccompanied by limitation of motion. *Id.* at 3.

In his motion for panel decision, the appellant clarified his reliance on VA's regulations as demonstrating functional impairment. Mot. at 1-2. He maintained that "VA's regulations contemplate, as a matter of law, the level of functional impairment of earning capacity necessary to establish a disability under *Saunders*, such that [his] reference to . . . regulations" that compensate sleep apnea, chronic sleep impairment, and pain was "sufficient to show that [his] pain and its resulting effects constitutes a disability for VA purposes." *Id.* at 5. Additionally, he asserted that *Saunders* does not require that he submit "vocational or economic evidence that his pain and sleep impairment affect *his* occupational functioning." *Id.* at 3 (emphasis added).

The Court granted the motion for panel review, afforded the Secretary the opportunity to respond to the merits of the arguments raised in the motion, and allowed the appellant to reply.

4

The Secretary argued that nothing in VA's rating schedule allows the appellant to forego the requirement that he establish that his right hip pain results in functional impairment that impairs his occupational functioning. Secretary's Response (Secretary's Resp.) to the Court's Dec. 26, 2019, Order at 1. As support, the Secretary noted that, in *Saunders*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) included an important caveat at the end of its decision: "We do not hold that a veteran could demonstrate service connection simply by asserting subjective pain," *Saunders*, 886 F.3d at 1367; rather, "'a veteran will need to show that [his or] her pain reaches the level of a functional impairment of earning capacity.'" Secretary's Resp. at 2 (quoting *Saunders*, 886 F.3d at 1367-68). Thus, the Secretary asserted that, although 38 C.F.R. §§ 4.40, 4.45, and 4.59 contemplate pain and interference with sitting or lying down as possible manifestations of functional loss, it does not follow that any such evidence necessarily rises to the level of impairment of earning capacity. *Id.* at 7-11. He similarly maintained that the appellant's mere reference to 38 C.F.R. §§ 4.71a, Diagnostic Code (DC) 5025 (fibromyalgia), 4.97, DC 6847 (sleep apnea), and 4.130 (mental health conditions), which refer to sleep or sleep-related symptomatology, is not adequate to demonstrate that his pain and alleged sleep impairment rise to the level of a disability under 38 U.S.C. § 1110. *Id.* at 4-7, 12.

The appellant argued in response that "VA's regulations, by definition, are its finding as to the level of functional impairment caused by a disability." Appellant's Reply at 1-2 (citing 38 C.F.R. § 4.1 (2020) ("The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations.")); *see* 38 U.S.C. § 1155. He further noted that "the Secretary[, in *Saunders*,] conceded that VA regulations invoke functional limitation as the indicator of reduced earning capacity and the barometer of disability." *Id.* at 5 (citing *Saunders*, 886 F.3d at 1362). Thus, he averred that his pain does not need to be compensable or result in functional loss to constitute a disability. *Id.* at 3-4. Rather, his hip pain and resulting difficulties with sitting and sleeping *equate* to functional impairment of earning capacity by virtue of regulations that establish that such difficulties constitute functional impairment as a matter of law. *Id.* at 5.

At oral argument, the appellant modified the argument raised in his motion for panel review and subsequent pleading. He no longer argued that VA regulations as a matter of law establish a disability. Oral Argument (OA) at 12:20-13:00, http://www.uscourts.cavc.gov/oral_arguments_

5

audio.php. Instead, he asserted that the rating schedule may serve as an indicator that VA generally recognizes certain functional impairments—here, pain and sleep impairment—as affecting earning capacity, but that the Board would have to determine factually whether the appellant's pain and sleep impairment rises to the level of a functional impairment in earning capacity. *Id.* at 13:30-13:55, 13:57-15:18, 18:00-19:15; *see id.* at 10:53-10:59 (stating that *Saunders* "recognizes that not all pain is a disability"). Although he maintained that a claimant would not need to show that he or she meets specific rating criteria, he averred that the rating schedule may inform the threshold determination as to whether VA recognizes certain types of impairments as limiting earning capacity. *Id.* at 18:00-19:15. He asked the Court to remand the matter for the Board to determine whether his pain and sleep difficulties amount to a functional impairment in earning capacity. *Id.* at 7:46-8:06, 20:00-20:27. And, when asked whether he was still asserting that his hip pain interfered with sitting, he admitted that the record is not clear as to that matter and suggested that VA had not fulfilled its duty to assist by developing evidence regarding his functional limitations. *Id.* at 40:30-41:35.

The Secretary agreed that VA's regulations are relevant and instructive with regard to whether certain manifestations may suggest functional impairment of earning capacity. *Id.* at 22:35-23:13, 30:40-32:03. He maintained, however, that the regulations are not dispositive or the end of the inquiry because the appellant bears the burden of showing not only that pain exists, but that the pain has an effect. *Id.* at 23:00-23:13. He argued therefore that the regulations do not establish functional impairment of earning capacity as a matter of law, *id.* at 31:53-32:00; instead, the Board must assess whether the appellant's pain resulted in functional impairment in earning capacity, which is a highly factual determination, *id.* at 30:00-30:15. Here, the Secretary argued that the Board made a plausible finding that the appellant's credible assertions of pain did not rise to that level. *Id.* at 30:18-30:35. He averred that the Board noted that the appellant's treatment records showed that he exhibited normal range of motion and could walk normally despite hip pain, and that the facts simply do not show sleep impairment as a result of hip pain that the Board needed to address. *Id.* at 32:50-33:17, 35:32-36:10. He concluded that the appellant has not shown that there was any other evidence that the Board needed to discuss, noting that the Board is presumed to have considered all the evidence and anything not discussed is too scant to warrant comment. *Id.* at 35:32-36:40.

B. Law

Grateful for their service, our Nation provides veterans compensation "[f]or disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury . . . or disease . . . in line of duty." 38 U.S.C. § 1110. Establishing that a disability is service connected for purposes of entitlement to VA disability compensation generally requires medical or, in certain circumstances, lay evidence of (1) a current disability, (2) incurrence or aggravation of a disease or injury in service, and (3) a nexus between the claimed in-service injury or disease and the current disability. *See* 38 U.S.C. § 1110; *Shedden v. Principi*, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); *see also Davidson v. Shinseki*, 581 F.3d 1313, 1316 (Fed. Cir. 2009); 38 C.F.R. § 3.303 (2020).

In *Saunders*, the Federal Circuit overruled nearly 20 years of precedent when it held that "pain in the absence of a presently-diagnosed condition can cause functional impairment," which may qualify as a "disability" under section 1110. 886 F.3d at 1368 (overruling *Sanchez-Benitez v. West*, 13 Vet.App. 282, 285 (1999), *appeal dismissed in part and vacated in part on other grounds sub nom. Sanchez-Benitez v. Principi*, 259 F.3d 1356 (Fed. Cir. 2001)). In reaching that determination, the Federal Circuit first examined the plain language of section 1110—VA's basic entitlement statute—and drew a distinction between the term "disability" and "disease or injury." *Id.* at 1362. In this regard, the Federal Circuit noted that section 1110 "imposes a requirement that a disability must result 'from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty'" and that the "statute does not expressly define what constitutes a 'disability.'" *Id.* (quoting 38 U.S.C. § 1110).

Based on the parties' concessions, "'VA regulations [that] invoke functional limitation as the indicator of reduced earning capacity and the barometer of disability,'" *id.* (quoting Appellee Br. at 22), dictionary definitions of disability,[2] and the purpose of the rating schedule, the Federal Circuit held that "'disability' in [section] 1110 refers to the functional impairment of earning capacity, not the underlying cause of said disability." *Id.* at 1362-63; *see* 38 U.S.C. § 1155 (Authority for schedule for rating disabilities); 38 C.F.R. §§ 4.1 (Essentials of evaluative rating),

---

[2] 886 F.3d at 1362 (citing MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 354 (11th ed. 2014) (defining "disability" as "the condition of being disabled," that is, a "limitation in the ability to pursue an occupation because of a physical or mental impairment"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 642 (1961) (defining "disability" as "the inability to pursue an occupation or perform services for wages because of physical or mental impairment"); DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 526 (32d ed. 2012) (DORLAND'S) (defining "disability" as "an incapacity or lack of the ability to function normally; it may be either physical or mental or both")).

4.10 (2017) (Functional impairment). With that understanding of the term disability, the Federal Circuit then turned to whether pain alone may serve as a functional impairment and thus qualify as a disability. *Id.* at 1363-64. Relying on *Dorland's* definition of "impairment"—"'any abnormality of, partial or complete loss of, or loss of the function of, a body part, organ, or system'"—and that pain was specifically listed as an example of an impairment, the Federal Circuit concluded "that pain is an impairment because it diminishes the body's ability to function" and the underlying pathology need not be diagnosed. *Saunders*, 886 F.3d at 1364 (quoting DORLAND'S at 922). The Federal Circuit drew further support from VA's regulations, specifically 38 C.F.R. §§ 4.40, 4.45, 4.56, 4.66, and 4.67, which treat pain as a form of functional loss, and stated that "these regulations indicate how . . . VA interprets the role of pain in assessing a disability, and thus they are relevant to the question of whether pain can be a disability." *Id.*

Finally, although the Federal Circuit rejected the notion that "pain must affect some aspect of the normal working movements of the body" or that it be "tied to physical evidence of a lack of functionality," it included a significant caveat at the end of its decision:

> We do not hold that a veteran could demonstrate service connection simply by asserting subjective pain—to establish a disability, the veteran's pain must amount to a functional impairment. To establish the presence of a disability, a veteran will need to show that [his or] her pain reaches the level of a functional impairment of earning capacity.

*Id.* at 1366-68.

## C. Discussion

As indicated above, the central dispute in this case revolves around what is necessary for a claimant to demonstrate that "[his or] her pain reaches the level of a functional impairment of earning capacity." *Id.* at 1368. Prior to oral argument, the appellant maintained that "VA's regulations contemplate, as a matter of law, the level of functional impairment of earning capacity necessary to establish a disability" under *Saunders*. Mot. at 5. However, such a broad interpretation of *Saunders* is not supported by a plain reading of the decision. Although the Federal Circuit did not answer the precise question, there are a few points that we are able to extract from its decision to inform our analysis. First, *Saunders* expressly provides that subjective pain is not enough to establish the presence of a disability. 886 F.3d at 1367. The pain must amount to a functional impairment—i.e., diminish the body's ability to function. Second, by requiring that a veteran's pain "*reach*[] *the level* of a functional impairment of earning capacity," *id*. at 1368 (emphasis added), *Saunders* suggests that VA must undertake an individualized assessment, which includes a

8

preliminary evaluation of the degree of impairment. In other words, although pain alone *can* serve as a functional impairment, the mere existence of pain is not enough to constitute a disability.[3] It must impair earning capacity. Indeed, the Federal Circuit remanded Ms. Saunders's case for the Board to make necessary factual findings as to whether her pain "impaired her function" and the "scope of any such impairment." *Id.* at 1368-69.

The question thus remains what role, if any, does VA's rating schedule have in assessing the presence of a disability under section 1110.[4] Because VA's rating schedule reflects, "as far as can practicably be determined the average impairment of earning capacity," 38 C.F.R. § 4.1, and the Secretary conceded in *Saunders* that "'VA regulations invoke functional limitation as the indicator of reduced earning capacity and the barometer of disability,'" 886 F.3d at 1362 (quoting Appellee Br. at 22), the Court concludes that the rating schedule may serve as a proxy for determining whether certain manifestations may impair earning capacity.[5] Specifically, where VA has determined by regulation that *the average person* with certain manifestations would suffer an impairment of earning capacity, that may be relevant and instructive with regard to whether an individual veteran with similar manifestations has functional impairment of earning capacity.

But the appellant has not provided any persuasive reason to conclude that merely pointing to a diagnostic code that recognizes a symptom or manifestation as potentially affecting earning capacity demonstrates, as a matter of law, the level of functional impairment of earning capacity necessary to establish a disability in a particular claimant with the same manifestation, regardless

---

[3] The Court recognizes that, in *Petitti v. McDonald*, we rejected the Secretary's argument that the mere presence of joint pain is not sufficient to warrant a minimum compensable rating under 38 C.F.R. § 4.59. 27 Vet.App. 415, 423-27 (2015). However, *Petitti* involved the unique interplay between § 4.71a, DC 5002, and § 4.59, which the Court found equated painful motion with limitation of motion for purposes of a minimum compensable rating. *See id.*

[4] Because the appellant essentially limited his argument to the role VA's rating schedule plays in demonstrating that pain and its resulting effects rise to the level of a functional impairment of earning capacity, and argued that he was not required to present economic or vocational evidence showing that pain interfered with *his* occupational functioning, *see* Mot. at 3, the Court expresses no opinion as to the type and extent of the evidence required to demonstrate a functional impairment of earning capacity without regard to the rating schedule, including whether affirmative evidence of difficulty working would meet the *Saunders* requirement.

[5] Conversely, the Court recently concluded in *Martinez-Bodon v. Wilkie* that, although *Saunders*'s definition of disability in section 1110 is not limited to pain, the Secretary also may limit by regulation the types of conditions that constitute a disability for VA compensation purposes and the Court generally lacks jurisdiction to review those determinations. No. 18-3721, 2020 WL 4590176 (Vet. App. Aug. 11, 2020); *see id.* at *6 (holding "that the *Saunders* definition of a 'disability' is constrained . . . by VA's decision to limit the psychiatric disabilities it would compensate," i.e., VA's regulations expressly limit compensation for psychiatric disabilities by requiring a diagnosis that conforms to the fifth edition of the *Diagnostic and Statistical Manual of Mental Disorders*).

of any evidence specific to the claimant as to the frequency, severity, or duration of the manifestation. Indeed, at oral argument, both parties essentially agreed that the existence of pain or difficulty sleeping is not enough to constitute a disability; rather, the Board must make the factual determination whether the appellant's manifestations rise to the level of a functional impairment in earning capacity. *See* OA at 10:53-11:26 (appellant's counsel stating that *Saunders* "recognizes that not all pain is a disability" and providing an example that headaches for 5 minutes per year might not rise to the level of a disability), 23:00-23:13 (Secretary's counsel stating that pain must have an "effect"), 28:13-28:30 (Secretary's counsel maintaining that the pain must have some level of an effect such that it amounts to a functional impairment in earning capacity).

Accordingly, to establish the presence of a disability pursuant to *Saunders*, there must be competent evidence specific to the claimant tending to show that his or her impairment rises to a level to affect earning capacity, which may include showing manifestations of a similar severity, frequency, and duration as those VA has determined by regulation would cause impaired earning capacity in an average person. This conclusion is consistent with the purpose of veterans' compensation, which is to compensate veterans for reductions in earning capacity, and VA's rating schedule, which "has specific criteria designed to reflect the nature and severity of the [disability] with corresponding ratings based on the average impairment in earning capacity." *Sowers v. McDonald*, 27 Vet.App. 472, 478 (2016); *see* 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321 (2020), 4.1, 4.10.

### D. Application

Here, the appellant initially argued that the diagnostic codes for fibromyalgia, sleep apnea, and mental health disorders, *see* 38 C.F.R. §§ 4.71a, DC 5025; 4.97, DC 6847; and 4.130, which he alleged contemplate sleep difficulties or disturbances, and §§ 4.45 and 4.59, which recognize that trouble sitting and painful motion are relevant considerations when rating musculoskeletal disabilities, demonstrated that his hip pain and its resulting effects constituted a disability under *Saunders*. Based on the foregoing discussion of what *Saunders* requires, the Court concludes that the appellant cannot rest solely on VA's regulations to establish that the Board erred when it found no current disability. Although the appellant may rely generally on VA's regulations to assert that VA recognizes difficulty sitting and sleeping as *the types* of manifestations that can cause functional impairment in earning capacity, he must also show that his manifestations are of

10

sufficient severity, duration, and frequency that they effect his ability to function under the ordinary conditions of daily life.

In this regard, the parties dispute whether remand is warranted for the Board to reassess whether the evidence establishes the presence of a right hip disability. The appellant maintained that the Board considered only that he exhibited normal range of motion and that he could walk normally, and thus failed to address favorable evidence indicating that his pain interferes with sitting and sleeping. The Secretary, on the other hand, argued that the Board conducted the analysis required by *Saunders*; plausibly concluded that the appellant's right hip pain does not rise to the level of causing a functional impairment in earning capacity; and, although the Board did not expressly discuss the appellant's alleged sitting or sleeping difficulties, the appellant has not demonstrated prejudicial error.

The Court agrees with the Secretary that the appellant has not met his burden of demonstrating that any error on the part of the Board is prejudicial.[6] *See Sanders*, 556 U.S. at 409 (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). The Court acknowledges that the Board did not explicitly discuss the evidence now cited by the appellant as demonstrating difficulty sitting and sleeping. *See* R. at 8-9. But, the Board benefits from a presumption that it has considered all evidence of record, *see Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007) (holding that the Board is presumed to have considered all evidence presented in the record), and the Court has a statutory duty to assess prejudice, 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"). Further, as this Court recognized in *Simmons v. Wilkie*, the Court's harmless error authority is "exceedingly broad" and necessarily requires the Court to "go beyond the Board's analysis because '[t]he Board cannot predict every instance in which it might be found to have committed error,' and, therefore, 'cannot be expected to make specific factual findings that might facilitate a prejudicial error analysis.'" 30 Vet.App. 267, 284 (2018) (quoting *Vogan v. Shinseki*, 24 Vet.App. 159, 163 (2010)), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020).

---

[6] In this regard, the Court stresses that we limit our analysis to the arguments presented by the appellant in his briefs and his concessions during oral argument concerning the insufficiency of the evidence. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) ("[T]he party seeking reversal normally must explain why the erroneous ruling caused harm[,] . . . by marshaling the facts and evidence.").

In his opening brief and at oral argument, the appellant initially argued that the record contains objective evidence confirming that he experienced significant, constant, and chronic right hip pain and that his pain interfered with sitting and sleeping. Appellant's Br. at 8 (citing R. at 1879, 2513, 2741 (all VA treatment records from 2013)); OA at 11:30-11:47, 38:31-39:55 (referring to R. at 401, 996, 2513, 2516, 2741, 2818). However, the appellant did not explain how any of the cited evidence undermines the Board's determination that his pain was not so severe as to cause a functional impairment in earning capacity. R. at 9. Additionally, the appellant made several pivotal statements during oral argument that reinforce the Court's conclusion that he has not carried his burden of demonstrating prejudicial error. First, he conceded that the evidence does not clearly attribute difficulty sitting to his right hip pain, noting that pages 2513, 2741, and 2818 of the record also refer to back pain. OA at 40:30-41:35. This is significant because he also relied on two of those records—pages 2741 and 2818—to support his contention that his difficulty sleeping is related to his right hip pain. *Id.* at 39:21-39:53. Second, he stated that we do not yet have an examination that addresses the extent of his functional limitation and, importantly, he conceded that the record is premature as to the actual cause of his functional limitation. *Id.* at 39:55-40:25, 41:20-41:35.

Considering that the appellant essentially conceded that his treatment records do not clearly attribute difficulty sitting or sleeping to right hip pain and that the overall record does not contain evidence regarding the extent of any functional limitation, the Court is not convinced that he has demonstrated that the Board was required to explicitly discuss this evidence or that the outcome could have been any different had the Board done so. *See Sanders*, 556 U.S. at 410. Indeed, rather than explaining how the evidence he cites "could have made any difference," *Sanders*, 556 U.S. at 413, his concessions amount to an acknowledgment that it could not. Further, to the extent that the appellant, for the first time during oral argument, suggested that either VA failed in its duty to assist by not obtaining evidence regarding the extent of his functional limitations, or that a remand might trigger VA to further develop the record to determine the cause of his alleged limitations, the Court will not address these matters.[7] *See Carbino v. Gober*, 10 Vet.App. 507, 511 (1997)

---

[7] Although the record does not reflect when the appellant retained current counsel, the Court notes that it appears from the Board decision that he retained counsel prior to the July 2018 Board decision and there is no indication or assertion that he raised a duty to assist argument below. *See Scott v. McDonald*, 789 F.3d 1375, 1377 (Fed. Cir. 2015) ("'[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.'" (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952))).

(declining to review an argument first raised in the appellant's reply brief), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered."); *see also Untalan v. Nicholson*, 20 Vet.App. 467, 471 (2006); *Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990). Unlike other cases in which the Court has exercised its discretion to hear late-raised arguments, *see, e.g.*, *Crumlich v. Wilkie*, 31 Vet.App. 194, 202 (2019) (addressing a late-raised argument where "the Court was presented with a compelling allegation that the regulation VA ask[ed the Court] to apply conflict[ed] with the appellant's statutory rights and the Secretary's concessions appeared to confirm that allegation" and the Court thereafter obtained a written response from the Secretary), we decline to do so under these circumstances.

Finally, we are compelled to refute our dissenting colleague's contentions that we (1) are applying "a legally erroneous standard to assess whether the appellant was prejudiced by the Board's" decision, *post* at 16, and (2) erred by declining to address the appellant's late-raised argument concerning the duty to assist, *see id.* First, the Supreme Court's decision in *Sanders* "requires [that we] apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases," 556 U.S. at 406, which means that the burden falls on *the appellant* to show that the Board's error was harmful, *see id.* at 409-10. This is the standard that we apply today. To be sure, we do not purport to assess the relevance, competence, credibility, or weight of the evidence; we conclude that the appellant has not satisfied his burden of showing that the Board overlooked evidence prejudicial to the outcome of his case. Further, this Court, the Federal Circuit, and the Supreme Court have applied the same standard under similar circumstances. *See, e.g.*, *Sanders*, 556 U.S. at 413 (concluding that appellant Sanders had not met the burden of showing that he suffered prejudice as a result of VA error, after announcing in the same decision that he bore that burden); *Waters v. Shinseki*, 601 F.3d 1274, 1277 (Fed. Cir. 2010) (addressing, in the first instance, the correct evidentiary standards in 38 U.S.C. § 5103A(d)(2), but declining to remand because the appellant had "not shown any factual basis for his claim" and thus "any possible error by the Board in using the wrong standard . . . could not have prejudiced [him]"). Conversely, the dissent speculates, based on evidence that the appellant does not rely on, that it is conceivable that the

Board might have come to a different result.[8] But that is not the standard. And, even if it were, it was the appellant's obligation to make that showing.

Second, declining to address the appellant's late-raised argument is consistent with decades of caselaw from our Court and higher courts and is particularly warranted here, considering that he did not raise the argument until the rebuttal portion of oral argument, it has not been briefed by either party, the appellant did not offer any explanation for why the issue was not raised previously, and even though after oral argument he filed a motion including substantive arguments, he did not raise the duty to assist or seek leave to submit argument on that issue. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (second alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment))). In sum, the appellant had ample opportunity to raise the matter of VA's duty to assist and he has offered us no reason to exercise our discretion to address on the merits a brief, unsupported statement made only in the waning moments of oral argument.

### III. CONCLUSION

The appeal of the Board's July 19, 2018, decision denying disability compensation for low back and left knee disabilities is DISMISSED. After consideration of the parties' pleadings and a review of the record, the Board's decision denying disability compensation for a right hip disability is AFFIRMED.

ALLEN, *Judge*, concurring in part and dissenting in part: I join sections I, II.A, II.B, and II.C of the Court's opinion in full and without reservation. The Court clearly and accurately explains how a claimant can establish that his or her subjective pain qualifies as a disability under 38 U.S.C. § 1110 because the pain reaches a level that causes functional impairment of earning

---

[8] Indeed, only 5 of the 16 entries listed in the appendix to the dissent mention the right hip; the appellant conceded at oral argument that 3 of those entries are unclear with regard to whether the examiner's notations refer to the appellant's right hip or his back; 10 of the 16 entries were not cited by the appellant in support of his right hip claim; and 1 record was not cited at all by the appellant.

capacity. *See Saunders v. Wilkie*, 886 F.3d 356, 1367-68 (Fed. Cir. 2018). I part ways with the majority with respect to the Court's application of its new rule to Mr. Wait's claim. I would remand the matter for the Board to assess the record evidence in the first instance under the legal test we have laid out. Therefore, I respectfully dissent from sections II.D. and III of the Court's opinion.

As an initial matter, I agree with the portion of section II.D. of the majority opinion explaining that a claimant

> cannot rest solely on VA's regulations to establish that the Board erred when it found no current disability. Although the appellant may rely generally on VA's regulations to assert that VA recognizes difficulty sitting and sleeping as *the types* of manifestations that can cause functional impairment in earning capacity, he must also show that his manifestations are of sufficient severity, duration, and frequency that they effect his ability to function under the ordinary conditions of daily life.

*Ante* at 10-11 (emphasis in original). But having recognized this point, the majority determines for itself that the evidence concerning the aspects of the rating schedule to which appellant cites to establish functional limitations on his earning capacity (those concerning sitting and sleeping) is insufficient to establish prejudicial error. That is where I believe the majority errs.

I have included as an appendix to this opinion a list of evidence in the record related to how appellant's hip pain may result in difficulties sitting and sleeping. I do not maintain that this evidence *requires* that a factfinder rule in appellant's favor. The factfinder would have to conclude that appellant's subjective hip pain sufficiently impacts his daily life in terms of the severity, frequency, and duration of the impairments in his ability to sit and sleep so as to qualify his pain as a "disability" under *Saunders*. Perhaps it does or perhaps it does not. My point is that the Board, as factfinder, should have the opportunity to assess the evidence on these questions in the first instance. I have three principal areas of disagreement with the majority's approach.

First, the majority states that even though the Board did not discuss certain evidence, we can presume that it considered that evidence. *See ante* at 11 (citing *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007)). I have no problem with this legal principle in the abstract. But it doesn't get us very far in this case. The reason is that even if we assume the Board looked at every piece of evidence in the record that bears on anything even remotely related to appellant's pain and its relationship to impairments in sitting and sleeping, the Board did not have the benefit of today's decision. It is only today that we have articulated the appropriate legal test for determining whether pain qualifies as a disability due to a proxy relationship to something the

rating schedule considers an impairment. Without the Board knowing what questions it was asking – something I underscore we only establish in this opinion – the presumption that it looked at all the evidence is neither here nor there.

Second, the majority declines to consider appellant's argument that VA would have been required to assist him in developing evidence to meet his evidentiary burden. *See ante* at 12-13. The majority does so because the argument was not advanced before the Agency or in the opening brief before us. *Id*. I agree we have discretion to deem arguments waived in these circumstances and will often do so. But in this case, we are dealing with what amounts to an entirely new legal principle brought to life in *Saunders*. And until today, the contours of how one meets the burden *Saunders* imposed was undefined. In my view, judges and counsel alike were working through the difficult issues in this case as if we were exploring an uncharted landscape. It is entirely understandable that parties would recognize later in the journey approaches to the problem that were not apparent at the beginning. Moreover, I see no prejudice to the Secretary if we were to consider this aspect of appellant's argument. I believe the majority abuses its discretion by declining to address appellant's argument in the context of this first-impression legal issue.

Finally, I believe the majority uses a legally erroneous standard to assess whether appellant was prejudiced by the Board's failure to conduct the analysis required under today's decision. It is true that we have held that our authority to consider the harmful nature of an error is "exceedingly broad." *Simmons v. Wilkie*, 30 Vet.App. 267, 284 (2018); *see* 38 U.S.C. § 7261(b)(2). But that does not mean that our authority is limitless. I invite the reader to skim the list of record evidence in the appendix to this opinion. In order to reach its conclusion that the evidence is legally insufficient for appellant to prevail (which must be the case for the error here to be harmless), the majority must (1) determine whether each piece of evidence is relevant (i.e., does the impairment relate to appellant's hip pain, or something else?); (2) assess the competency of each piece of evidence; and (3) determine credibility matters where necessary. After doing all that, the majority then must weigh all this evidence to determine what it tells us (individually and collectively one would assume) about the frequency, severity, and duration of two different impairments (sitting and sleeping). This is quite a complex balancing of multiple evidentiary questions. Then, the majority must take the evidence it has determined to be relevant, competent, and credible and that it has weighed and balanced with respect to frequency, severity, and duration for the two impairments at issue and reach a conclusion about whether all the evidence, appropriately weighed,

satisfies *Saunders* as we have interpreted it. And to top it off, the majority needs to do all this in a case of first impression. In short, the breadth, depth, and scope of the majority's factfinding goes well beyond the appropriate boundaries to assess prejudicial error no matter how "exceedingly broad" such boundaries may be.

Do not get me wrong. As I noted above, I am not saying the evidence compels a ruling in favor of appellant or even necessarily makes such a ruling more likely than not. But it certainly is not a foregone conclusion that a factfinder would rule against appellant. I would remand this appeal so that the Board, as factfinder, could review Mr. Wait's claim subject to appellate review in this Court should that be necessary. He might not prevail before a true factfinder, but he should at least be given the chance to do so. Therefore, I respectfully dissent from sections II.D and III of the Court's opinion.

## Appendix to Opinion of Allen, J.
## Summary of Record Evidence

- *February 12, 2013, VA Treatment Note*: Appellant sought treatment for, among other things, tenderness in his hip. He reported to a VA clinician that "[s]ince being placed on medical leave in 2008, he has worked painting/construction jobs prior to being unable to work in the summer of 2012 when his pain no longer allowed him to physically carry an occupation." R. at 2810.

- *February 20, 2013, VA Social Work Assessment*: A VA social worker noted under the heading "Potential Employability" that appellant reported that "[d]ue to back and knee issues he feels he is not able to work at this time." R. at 2585. Appellant later during the consultation, stated that he needed to "cure pain from my injuries, am unable to sit, walk, and bend for long periods." R. at 2589.

- *February 21, 2013, VA Nursing Note*: A VA clinician examined and assessed appellant's pain as well as chronic pain. Appellant complained of right hip pain and reported that sitting and standing for too long make his pain worse. The clinician also noted that "[p]ain or discomfort has interfered with the patient[']s quality of daily life in sleep/general activity/mobility." R. at 2818. Appellant also reported that his pain interferes with sleep and work. R. at 2819-10.

- *February 21, 2013, VA Vocational Rehabilitation Assessment*: Appellant reported to the VA specialist that the reason he left his job as a paramedic was because of his knee and back injuries. R. at 2787.

- *February 28, 2013, VA Nursing Note*: Appellant reported to a VA clinician that his back, knee, and hip pain had worsened. Because of his pain, he reported that he sleeps intermittently and has "problems even sitting down due to increased pain." R. at 2741.

- *March 4, 2013, VA Treatment Note*: Appellant underwent a chronic pain evaluation and it was noted that appellant's pain location has not changed and it interferes with his sleep, work, chores, or hobbies, and his ability to walk. A VA clinician noted that appellant's pain goal had not been met because the scores were not "within acceptable range." R. at 2731.

- *May 1, 2013, VA Treatment Note*: Appellant was examined for "sharp and aching" pain in his right hip. The VA clinician noted appellant's reports that sitting and lying down caused radiating pain. R. at 2632-33. Appellant also reported that it feels better when he is walking. R. at 2633.

- *June 5, 2013, VA Pain Management Consultation Note*: Appellant reported to a VA clinician that he has chronic right hip pain that radiates down his leg and it gets worse "with sitting and lying down. He stated that it feels the best being up and moving around." R. at 2513.

- *July 18, 2013, VA Emergency Department Note*: Appellant reported to a VA clinician that he "[c]annot sleep due to pain in his low back at the spine and his [left] knee." R. at 372.

- *August 14, 2013, VA Treatment Note*: This record is incomplete; however, a VA clinician noted that appellant was walking without distress and "able to sit and stand well." R. at 1911. It is important to note that this document is an outlier when considered with the other evidence of record.

- *August 15, 2013, VA Emergency Department Note*: Appellant reported to a VA clinician that sitting and lying down makes his back and knee pain worse and that nothing has made his pain better. R. at 223. This information was also restated in an addendum to the treatment note. R. at 1879.

- *September 18, 2013, VA Vocational Rehabilitation Consultation Note*: Appellant informed the VA specialist that he would like return to work but "sitting down is difficult and walking is difficult" because of his knee. R. at 2173.

- *October 2, 2014, VA Behavioral Health Care Management Note*: Appellant stated that he has not noticed any improvement in his mood or pain since taking certain medications. He complained about continued sleep issues, stating that it takes him over an hour to fall asleep and that he will wake up about four to six times each night. The VA clinician noted that among other things, his insomnia symptoms are consistent with his previous assessment three months earlier. R. at 1285.

- *February 3, 2015, VA Pain Management Progress Note*: Appellant discussed strategies with a VA clinician for medication that would reduce pain and improve his sleep. R. at 1237.

- *February 3, 2015, VA Primary Care Nursing Note*: Appellant reported to a VA clinician that daily activity and "prolong[ed] sitting" makes his pain worse. He was also asked what

18

makes his pain better and he responded by stating that he is in "constant pain but standing and light walks help." R. at 1238.

- *June 1, 2015, VA Behavioral Health Evaluation*: Appellant was evaluated by a VA psychologist at the request of a pain psychiatrist "to assist with mood, poor sleep, and coping with current stressors." R. at 995, 1000. Appellant reported that his head was " so cloudy with everything going on," and he complained of "chronic pain, discontent with the VA system, poor sleep, and symptoms of depression." R. at 995. During the evaluation, the psychologist asked appellant about his sleep issues. Appellant responded that it was his greatest concern and that "he only sleeps 2 hours at a time with frequent awakenings due to physical discomfort." R. at 996. The psychologist also noted that some of appellant's subjective symptoms included "Sleep problem" and "Pain/Medical." *Id.*